Tax Equity Alliance for Massachusetts, Inc. *v.* Commissioner of Revenue.

TAX EQUITY ALLIANCE FOR MASSACHUSETTS, INC., & others[1]
*vs.* COMMISSIONER OF REVENUE & others.[2]

Suffolk.  December 10, 1987. — December 16, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Standing. *Constitutional Law,* Standing to question constitutionality, Initiative, Taxation. *Taxation,* Income tax. *Words*: "Specific appropriation."

Individual plaintiffs, as citizens and qualified voters, had standing to seek a declaration that a certain measure could not, under art. 48 of the Massachusetts Constitution, The Initiative, II, § 2, properly be made the subject of the initiative procedure. [313-314]

General Laws c. 62F, inserted by St. 1986, c. 555, § 2, insofar as it provides for certain tax credits to be calculated on the basis of the amount of "excess revenues" held in the State treasury, did not make a specific appropriation of money from the treasury and, therefore, was a proper measure for the people to approve through the initiative process. [314-317]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on November 3, 1987.

The case was reported by *Wilkins, J.*

*Paul R. McDaniel & Sandra C. Quinn* for the plaintiffs.

[1] Patricia A. Williams, a citizen, qualified voter, and Massachusetts taxpayer; Roberta Praeger, a citizen and qualified voter.

The Tax Equity Alliance for Massachusetts, Inc., comprises public interest groups, including the League of Women Voters, Fair Share, the Massachusetts Human Services Coalition and individuals, and was formed "to promote the social welfare of all persons in the Commonwealth of Massachusetts by seeking the promotion of equity in taxation and public expenditures."

[2] The interveners are Ronald J. Graham, a citizen, qualified voter, and Massachusetts taxpayer, who is one of the ten original signers of the initiative petition, and the Massachusetts High Technology Council, Inc., a Massachusetts nonprofit corporation whose purpose "is to help make Massachusetts a competitive environment for business, in particular high technology business."

*Kenneth A. Cohen (Donald J. Evans & Mark W. Pearlstein* with him) for the interveners.

*Carolyn V. Wood,* Assistant Attorney General, for the Commissioner of Revenue.

*Paul Peter Nicolai,* for Citizens for Limited Taxation, amicus curiae, submitted a brief.

WILKINS, J. At the November, 1986, State election, the people approved a measure concerning a so-called State tax revenue growth limit. That measure was originated and approved through the initiative process set forth in art. 48 of the Amendments to the Constitution of the Commonwealth, as amended by art. 74 of the Amendments. St. 1986, c. 555, § 2, inserting G. L. c. 62F. In this action the plaintiffs seek a determination that G. L. c. 62F was not lawfully approved because, by providing for certain income tax credits, it improperly proposed action on a matter which, under art. 48, The Initiative, II, § 2, could not properly be made the subject of the initiative procedure. They further seek to enjoin the implementation of any income tax credits under G. L. c. 62F.

Section 2, the first paragraph of which is set forth in the margin,[3] provides in part that an initiative measure may not make "a specific appropriation of money from the treasury of the commonwealth." Chapter 62F seeks to impose a State tax revenue growth limit. It also provides that, if net State tax revenues, as defined, for a fiscal year exceed the allowable State tax revenues, as defined, for that fiscal year, the amount of the excess should be credited "to the then current personal in-

---

[3] Article 48, The Initiative, II, § 2, first par., provides:

"*Excluded Matters.* — No measure that relates to religion, religious practices or religious institutions; or to the appointment, qualification, tenure, removal, recall or compensation of judges; or to the reversal of a judicial decision; or to the powers, creation or abolition of courts; or the operation of which is restricted to a particular town, city or other political division or to particular districts or localities of the commonwealth; or that makes a specific appropriation of money from the treasury of the commonwealth, shall be proposed by an initiative petition; but if a law approved by the people is not repealed, the general court shall raise by taxation or otherwise and shall appropriate such money as may be necessary to carry such law into effect."

come tax liability of all taxpayers on a proportional basis to the personal income tax liability incurred by all taxpayers in the immediately preceding taxable year." G. L. c. 62F, § 6 (1986 ed.). Because there was an excess of revenues in the fiscal year that ended on June 30, 1987, a taxpayer filing a Massachusetts 1987 income tax return who had a Massachusetts income tax obligation in 1986 will be entitled to a credit against any 1987 income tax liability. It is the provision for this form of income tax credit which the plaintiffs argue is an excluded matter under § 2 as "a specific appropriation of money from the treasury of the commonwealth."

We need not be concerned here in detail with the determination that there were excess State tax revenues for the fiscal year ended June 30, 1987, with the amount of that excess, or with the amount of the credit to be allowed to each qualifying taxpayer. The sole substantive question is whether G. L. c. 62F in so far as it provides for income tax credits in certain circumstances was the proper subject of an initiative measure. After determining that the individual plaintiffs are entitled to maintain this action at this time, we discuss the substantive issue and conclude that the initiative measure did not make a specific appropriation of money from the treasury of the Commonwealth and was, therefore, a proper measure for the people to approve through the initiative process.

This case, here on a reservation and report by a single justice of this court, is presented on the pleadings and a statement of agreed facts. The people approved the initiative proposal by a vote of 863,130 (54.4%) to 724,925 (45.6%), with 189,221 blank votes on the question. In August of this year, the State Auditor, pursuant to G. L. c. 62F, § 5(*b*), determined that there was an excess over allowable State tax revenues of $29,221,675.23 for the 1987 fiscal year. The Department of

Revenue has estimated that the excess revenue credit for taxable year 1987 will be distributed as shown in the margin.[4]

An individual's excess revenue credit as to one tax year is calculated by multiplying that taxpayer's personal income tax liability for the previous tax year by a factor which reflects the relationship of (a) the excess State tax revenues determined by the State Auditor under G. L. c. 62F to (b) the personal income tax liability incurred by all income taxpayers in the previous tax year. The Commissioner of Revenue has calculated that the factor for 1987 income taxpayers will be .0078. In other words, a taxpayer filing a 1987 income tax return showing a 1987 liability for income taxes will be entitled to a credit of .78% of his, her, or its 1986 income tax liability, which represents approximately three quarters of a cent for each dollar of 1986 income tax liability.[5]

1. The Commissioner of Revenue and the intervener defendants argue that the plaintiffs lack standing. We disagree. Certainly the individual plaintiffs as citizens and qualified voters have standing to raise a challenge to the use of the initiative process to adopt G. L. c. 62F. *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth,* 384 Mass. 209, 214-215 (1981). See *Cohen* v. *Attorney Gen.,* 354 Mass. 384, 387

---

[4]

| Income | Number and % of Returns | Amount of Credit | % of the excess to be credited |
|---|---|---|---|
| Under $20,000 | 1,000,000 (44%) | $3,100,000 | 11% |
| $20,000 to $40,000 | 798,000 (35%) | $6,800,000 | 23% |
| $40,000 to $100,000 | 413,000 (18%) | $8,700,000 | 30% |
| Over $100,000 | 51,000 (2%) | $10,000,000 | 36% |

The total of the credits shown on the schedule above is $29,100,000. Not all the $29,221,675.23 will be reflected in the total of all 1987 tax credits. Chapter 62F allocates the excess on the assumption, which is not quite true, that each taxpayer who had 1986 income tax liability will use his, her, or its full credit on a 1987 income tax return.

[5] The Commissioner has proposed regulations that indicate that the excess revenue credit will be available to resident and nonresident individual taxpayers and to fiduciaries, corporate trusts, and certain clubs and other not-for-profit organizations paying income taxes.

(1968) (qualified voters), and cases cited; *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310, 314-315 (1951).

There is no other available remedy which the plaintiffs could have pursued.[6] The device of G. L. c. 29, § 63 (1986 ed.), which concerns a twenty-four taxpayer action to enjoin the unlawful expenditure of money, has no potential application here. The plaintiffs' challenge is to an alleged appropriation, not to an expenditure which is the subject of G. L. c. 29, § 63. An appropriation and an expenditure are not the same. Moreover, G. L. c. 62F does not involve the expenditure of State funds any more than, as will be shown, it involves an appropriation.

We need not decide whether the Tax Equity Alliance for Massachusetts, Inc., has standing because the individual plaintiffs do. See *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth,* 384 Mass. 209, 214 (1981). Cf. *Massachusetts Pub. Interest Research Group* v. *Secretary of the Commonwealth,* 375 Mass. 85, 91 (1978) (corporation had no standing but other plaintiffs did). See also *Slama* v. *Attorney Gen.,* 384 Mass. 620, 623-625 (1981) (city had no standing to challenge lawfulness of measure adopted under the initiative process).

2. The excess revenue credit provisions of G. L. c. 62F were a proper subject of an initiative petition.

It has never been questioned that matters of income taxation may be the subject of an initiative petition under art. 48. See *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth,* 384 Mass. 209, 238-245 (1981). Article 48, The Initiative, II, § 2, does not exclude from the initiative process a measure that relates to the raising of public revenue but rather, on the subject of public revenue, § 2 excludes only a measure "that makes a specific appropriation of money from the treasury of the commonwealth." Thus, a measure intended to limit the

---

[6] We assume, without deciding, that this action for declaratory and injunctive relief could not be maintained if there were a specific statutory procedure available to challenge the adoption of the portion of G. L. c. 62F which provides for tax credits. Cf. *Sears* v. *Treasurer & Receiver Gen., supra* at 315-316 (mandamus not available if G. L. c. 29, § 63, provides an adequate avenue of relief).

use of particular State revenues solely to highway purposes is excluded from the initiative process as making a specific appropriation. *Opinion of the Justices,* 297 Mass. 577, 580-581 (1937). The word "specific" in the phrase "specific appropriation" does not necessarily refer to an exact dollar amount (*Slama* v. *Attorney Gen.,* 384 Mass. 620, 626 [1981]), and should not "be interpreted in any narrow or constricted sense." *Opinion of the Justices, supra* at 580. The Justices in 1937 were of the view that § 2 was designed to prevent any interference with the general plan of art. 48 to deny the use of the initiative to set aside public revenue for any narrow purpose. *Id.* at 580-581. More recently, this court has held that a measure proposing to set aside certain sales and use tax receipts and income tax receipts for municipal purposes was a specific appropriation from the treasury and that the measure was not a proper subject of the initiative process. *Slama* v. *Attorney Gen., supra* at 626-627.

The granting of an income tax credit is not an appropriation according to any commonly understood sense of the word. An appropriation designates a sum of money to be devoted to some object. See *Opinion of the Justices,* 323 Mass. 764, 766 (1948); *Slama* v. *Attorney Gen., supra* at 625. Even accepting that a "specific" appropriation under § 2 does not mean a definite dollar amount, we see nothing in the proposed measure that designated that any money in the treasury of the Commonwealth be devoted to any purpose.

The plaintiffs seek to make their point by establishing that a tax credit in effect is a transfer of funds, a "specific appropriation," from the treasury of the Commonwealth.[7] If we were to

---

[7]This argument is novel, but it should not be rejected on that ground. There was an opportunity to make it at least once before, but it was not advanced. In *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth,* 384 Mass. 209 (1981), we dealt with challenges to St. 1980, c. 580, a measure commonly known as Proposition 2½. The plaintiffs argued, among other things, that Proposition 2½, which the people had adopted pursuant to art. 48, was not a proper subject of an initiative petition. Among the components of Proposition 2½ was an income tax deduction of fifty percent of rent paid by a taxpayer on his principal residence within the Commonwealth. Although many points were raised, the challengers did not

accept the argument that a tax credit involves a specific appropriation from the State treasury, as a practical matter we would be impermissibly expanding the excluded matters of § 2 at least to include State revenue legislation providing income tax credits and deductions. The fact that certain funds would ultimately be in the State treasury if a tax credit were not granted does not make the authorization of a tax credit an appropriation of those funds (which will never be received) and certainly does not involve an appropriation of funds in the State treasury.

The plaintiffs go on to point out that the amount of the income tax credits allowable under G. L. c. 62F is determined on the basis of funds already received and held in the State treasury. Thus, it is argued, the grant of tax credits in effect appropriates that "excess" revenue in the treasury. Those funds determined to be excess will not, however, be returned. Those funds will be retained in the treasury and because, under the theory of G. L. c. 62F, the Commonwealth received more revenue than it needed in the 1987 fiscal year, less income tax revenue will be taken from certain 1987 income taxpayers. The act of taking less money from a taxpayer because of the grant of a tax credit or a tax deduction is not an appropriation of funds from the State treasury or from anywhere else.[8]

The fact that, in certain instances, 1987 income taxpayers will receive refunds reflecting the consequences of G. L. c. 62F makes no substantive difference. The return of funds to which

argue that Proposition 2½ made an impermissible specific appropriation in granting a deduction of fifty percent of certain rent paid, which (because of the uniformity of income tax rates) was substantially the equivalent of a tax credit of a uniform percentage of rent paid.

[8] In support of its view that the allowance of a tax deduction is in effect a specific appropriation of funds from the treasury of the Commonwealth, the plaintiffs rely on language in the Justices' recent opinion concerning a proposal for income tax deductions for certain expenses incurred by taxpayers for the private education of their dependent children. *Opinion of the Justices, post* 1201 (1987). We noted that tax deductions are "the practical equivalent of direct government grants." *Id.* at 1204. Reference to the language of this recent *Opinion of the Justices* adds nothing to the plaintiffs' position. A new tax deduction is obviously beneficial to the taxpayer. In a sense it is a grant or a concession to the taxpayer. It is not, however, an appropriation, and § 2 does not use the word "grant."

a taxpayer is entitled does not involve the appropriation of funds although the amounts refunded are taken from the State treasury. The funds are there contingently (G. L. c. 62C, § 36 [1986 ed.]), and it has never been suggested that an appropriation is necessary to refund income tax overpayments with respect to the most recently completed tax year. See *Opinion of the Justices,* 393 Mass. 1209, 1222 (1984); *Howes Bros.* v. *Unemployment Compensation Comm'n,* 296 Mass. 275, 289-290 (1936), cert. denied, 300 U.S. 657 (1937).

3. The case is remanded to the single justice where judgment is to be entered declaring that the provision in G. L. c. 62F of certain income credits was not a matter excluded from the initiative process (art. 48, The Initiative, II, § 2) as a specific appropriation of money from the treasury of the Commonwealth.

*So ordered.*