# DECISIONS

## OF THE

## SUPREME JUDICIAL COURT

### OF

## MASSACHUSETTS

ASSOCIATED INDUSTRIES OF MASSACHUSETTS & others[1] vs.
SECRETARY OF THE COMMONWEALTH & another.[2]

Suffolk. May 5, 1992. - July 6, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

Constitutional Law, Initiative petition, Appropriation of money. Initiative.
Hazardous Waste.

The Attorney General correctly certified to the Secretary of the Common-
wealth that a certain initiative petition contained no matters excluded
from the initiative process, where the proposed measure made no "spe-
cific appropriation of money from the treasury," in accordance with the
requirement of art. 48, The Initiative, II, § 2, of the Amendments to
the Massachusetts Constitution. [5-9]
The Attorney General correctly certified to the Secretary of the Common-
wealth that a certain initiative petition was in proper form for submis-
sion to the people where the proposed measure constituted a law within
the meaning of art. 48 of the Amendments to the Massachusetts Con-
stitution. [10]

---

[1]Ten registered voters of the Commonwealth.
[2]Attorney General of the Commonwealth.

The summary of a certain initiative petition proposing an excise tax on oil
and hazardous material, prepared by the Attorney General pursuant to
art. 48 of the Amendments to the Massachusetts Constitution, that in-
formed the voters of the materials to which the tax would apply and
that stated how the excise revenue would be used, was both fair and
concise and met the requirements of art. 48, as amended by art. 74, for
submission to the people. [10-12]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on November 27, 1991.

The case was reported by *Nolan*, J.

*Stephen S. Ostrach* (*Emily R. Livingston* with him) for
the plaintiffs.

*Peter Sacks*, Assistant Attorney General, for the de-
fendants.

*David E. Wood*, for Massachusetts Public Interest Re-
search Group, Inc., amicus curiae, submitted a brief.

LIACOS, C.J. The plaintiffs commenced this action in the
county court, challenging the Attorney General's certification
and summary of an initiative petition entitled "An Act to
fund cleanup of hazardous waste dumpsites in Massachu-
setts." The single justice reserved and reported the action to
the full court on the parties' pleadings and statement of
agreed facts. We hold that both the certification and sum-
mary comply with art. 48 of the Amendments to the Massa-
chusetts Constitution, governing the initiative process.[3]

*Background.* The petition proposes to add a new chapter
to the General Laws, chapter 64K. This new chapter would
impose an excise on the "first possession" of oil and hazard-
ous material within the Commonwealth. The excise generally
would be payable by the individual or entity which first ac-
quires possession of oil or hazardous material imported into
the Commonwealth for subsequent sale or use, or which
manufactures oil or hazardous material in the Common-
wealth. Under § 2 of c. 64K, "oil" would be defined, with a

---

[3]We acknowledge the assistance given us by a brief from Massachusetts
Public Interest Research Group, Inc., as amicus curiae.

number of exceptions, as "insoluble or partially soluble oils of any kind or origin and in any form, including, without limitation, crude or fuel oils, lube oil or sludge, asphalt, or insoluble or partially insoluble derivates of mineral oils." "Hazardous material" would be defined, also with exceptions, as "any material that is a hazardous substance or a toxic chemical, as those terms are defined in this section." "Hazardous substance" would be defined in § 2 as "any substance listed pursuant to sections 101(14) and 102 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), P.L. 96-510, as amended." "Toxic chemical" would be defined as "a substance which is classified as a toxic chemical pursuant to Section 313 of the Emergency Planning and Community Right-To-Know Act of 1986, Title III of the Superfund Amendments and Reauthorization Act of 1986, P.L. 99-499, as amended."[4]

Under § 8 of c. 64K, all of the revenue generated by the excise would be credited to the Environmental Challenge Fund and be used, subject to appropriation by the Legislature, for the purposes designated in the statute governing the fund, G. L. c. 29, § 2J. That statute, as currently written, provides that "[a]mounts credited to said fund shall be used, subject to appropriation, solely for the clean up, control or response actions for oil and hazardous materials, reducing the production of hazardous waste or for any other action necessary to implement sections three A and four of chapter twenty-one E." In conjunction with adding c. 64K, the petition would amend G. L. c. 29, § 2J, to provide that "[a]mounts credited to the Fund shall be used, subject to appropriation, solely for the following purposes: (a) response actions for releases or threats of release of oil or hazardous material or for any other action necessary to implement chapter twenty-one E[;] (b) implementation and enforcement

---

[4]The sections of the Federal acts cited in the definitions of "Hazardous substance" and "Toxic chemical" are codified, respectively, at 42 U.S.C. §§ 9601 (14), 9602, and 11023 (1988).

of chapter sixty-four K." The amended § 2J would further provide that, while the amounts credited to the fund from the excise would be used, subject to appropriation, for both of the stated purposes, any amounts credited to the fund from other sources[5] would be used, subject to appropriation, for the first purpose only, i.e., implementation of G. L. c. 21E.

This petition was filed with the Attorney General and certified by him pursuant to art. 48, The Initiative, II, § 3. He certified, among other things, that the petition is in proper form and contains only subjects which are not excluded by art. 48 from the initiative process. He also prepared a written summary of the petition, as required by art. 48, and forwarded both his certification and summary to the Secretary of the Commonwealth. In summarizing the petition's definition of the hazardous material to be covered by the excise, the Attorney General stated: "Toxic chemicals would be covered if classified as toxic by the federal Environmental Protection Administration (EPA) under federal law. As of July 1, 1994, substances listed as hazardous by the EPA under federal law would also become subject to the excise." In summarizing the purposes for which the revenue from the excise would be used, the Attorney General stated: "Money in the Fund would be used, subject to legislative appropriation, to assess and clean up sites that have been or may be contaminated by oil or hazardous materials, and to carry out and enforce the excise."

After the proponents of the petition gathered and timely filed the required number of additional signatures, the Secretary transmitted the petition to the Legislature under art. 48, The Initiative, II, § 4. It appears the Legislature did not en-

---

[5]The Environmental Challenge Fund was established in 1987 as a separate fund on the books of the Commonwealth. It presently receives and, if the petition were enacted, would continue to receive monies from several sources, such as the civil administrative penalties collected by the Executive Office of Environmental Affairs under G. L. c. 21A, § 16 (1990 ed.), and the amounts collected by the Department of Environmental Protection under G. L. c. 21E, the Massachusetts Oil and Hazardous Material Release Prevention Act. See G. L. c. 29, § 2J (a)-(e).

act the measure proposed in the petition.[6] We are informed that the Secretary intends to place the measure and the Attorney General's summary on the November, 1992, Statewide ballot under art. 48, The Initiative, V, § 1, provided the petition is completed by the timely filing of a sufficient number of further signatures.

The plaintiffs seek a declaration that the Attorney General's certification and summary do not comply with art. 48, and an injunction barring the Secretary from placing the measure and summary on the ballot.[7]

*Certification.* The plaintiffs attack the Attorney General's certification on two grounds. Their principal claim is that the proposed measure would make a specific appropriation from the Commonwealth's treasury and, therefore, is excluded by art. 48 from the initiative process. We disagree.

Under art. 48, The Initiative, II, § 2, "[n]o measure . . . that makes a specific appropriation of money from the treasury of the commonwealth, shall be proposed by an initiative petition; but if a law approved by the people is not repealed, the general court shall raise by taxation or otherwise and shall appropriate such money as may be necessary to carry such law into effect." We recently noted that § 2 "does not exclude from the initiative process a measure that relates to the raising of public revenue but rather, on the subject of public revenue, § 2 excludes only a measure 'that makes a specific appropriation of money from the treasury of the commonwealth.'" *Tax Equity Alliance for Mass., Inc.* v. *Commissioner of Revenue,* 401 Mass. 310, 314 (1987). The basic purpose of excluding specific appropriation measures is to preserve the Legislature's general authority over the State

---

[6]As of the date of the parties' statement of agreed facts, the Legislature had not enacted the proposed measure. Neither side has informed us of any action taken by the Legislature since then. The deadline for the Legislature to act was May 6, 1992. See art. 48, The Initiative, V, § 1.

[7]It is not necessary for us to decide whether the Associated Industries of Massachusetts, a corporation which represents business interests in the Commonwealth, has standing to seek such relief. The individual plaintiffs clearly have standing. *Tax Equity Alliance for Mass., Inc.* v. *Commissioner of Revenue,* 401 Mass. 310, 313-314 (1987).

treasury, and to preclude special interest groups from attempting to usurp that authority through the use of initiatives which might compel the expenditure of public funds in a piecemeal fashion. *Slama* v. *Attorney Gen.*, 384 Mass. 620, 627 (1981). *Opinion of the Justices*, 297 Mass. 577, 580-581 (1937). See 2 Debates in the Massachusetts Constitutional Convention of 1917-1918, 815-833 (1918).

The essential aspect of a specific appropriation is that it removes public monies, and the decision how to spend them, from the control of the Legislature. For example, the petition in *Slama* proposed a law which would have created two separate funds, a local personal income tax fund and a local sales and use tax fund. Certain percentages of the tax revenue collected by and belonging to the Commonwealth would have been credited to those funds and distributed, without further action by the Legislature, to the cities and towns for whatever purposes they saw fit. We held that such a law would violate art. 48's proscription against specific appropriations, because the public monies "would be transferred automatically without appropriation by the Legislature," and thus would be "removed from the control of the Legislature." *Slama, supra* at 622, 627. In *Opinion of the Justices*, 297 Mass. at 579, the petition proposed a constitutional amendment which would have required, subject to exceptions not relevant here, that "the net proceeds of all gasoline excise taxes and all motor vehicle fuel, motor vehicle and trailer registration fees, licenses, duties, excises and similar taxes shall be expended only for highway purposes, including policing." The Justices concluded that this proposed amendment constituted a specific appropriation. "Its direct purpose is to seize upon all the revenue received from the designated sources and to appropriate it permanently to a specified public use. If it were adopted, the Legislature would be powerless to appropriate any revenue from that source to any other public use." *Opinion of the Justices*, 297 Mass. at 580.[8]

---

[8]Similarly, in *Opinion of the Justices*, 300 Mass. 630, 635-636 (1938), the Justices were faced with a bill which would have required distribution

The measure presently before the court would not place the monies in the Environmental Challenge Fund beyond the Legislature's control. To the contrary, the measure expressly states that the expenditure of monies from the fund would be "subject to appropriation" by the Legislature. It is difficult to imagine how a measure which states that it is "subject to appropriation" could have been intended to be an appropriation in and of itself.

The plaintiffs concede that this measure, standing alone, would not be a sufficient basis on which to disburse monies from the Environmental Challenge Fund. They concede that some action by the Legislature (an appropriation under art. 63) would be necessary before the monies would be available for use by the Executive Branch. The gist of the plaintiffs' argument seems to be that the measure impermissibly would remove the Legislature's discretion in exercising its appropriative power. This is so, they claim, because the measure would compel the Legislature to appropriate the monies in the fund solely for the purposes designated in G. L. c. 29, § 2J. In constructing this argument, the plaintiffs focus on the mandatory tone of the words "shall" and "solely." They read the measure to say that the monies in the fund "shall" be used "solely" for the designated purposes of the fund. Obviously, however, those words are tempered by the inclusion of the additional words "subject to appropriation," which clearly refer to the Legislature's powers to appropriate as specified in art. 63. Cf. *Opinion of the Justices*, 323 Mass. 764, 767 (1948) (bill which provided twenty per cent pay increase for certain State officers and employees was construed "as increasing salaries subject to existing or future ap-

---

of monies from the Highway Fund, "without appropriation," to the cities and towns. The Justices were asked, among other things, whether the bill constituted an appropriation within the meaning of art. 63 of the Amendments to the Constitution of the Commonwealth. Recognizing that such a bill authorized the payment of public monies without further action by the Legislature, the Justices answered that the bill did in fact constitute an appropriation.

propriation for salaries and not as an appropriation bill" under art. 63).

In reaching this conclusion, we continue to adhere to the definition of appropriation set forth in *Opinion of the Justices*, 323 Mass. at 766, quoting *State* v. *Moore*, 50 Neb. 88, 96 (1896). "To appropriate," the Justices stated, "has been defined as 'to set apart from the public revenue a certain sum of money for a specified object, in such manner that the executive officers of the government are authorized to use that money, and no more, for that object and for no other.' " We adhered to this definition in *Tax Equity Alliance for Mass., Inc.*, *supra* at 315, and, before that, in *Slama, supra* at 625. We have not held, as the plaintiffs argue, that an appropriation occurs whenever public monies are set aside for a specific purpose.[9] In order for there to be an appropriation, the monies must be set aside "in such manner that the executive officers of the government are authorized to use that money." It is not until the Executive Branch becomes authorized to use the monies that the monies are removed from the further control of the Legislature. Merely setting aside the monies, in the sense of placing them in a separate fund, does not necessarily remove them from the Legislature's control. Even directing that they be used for a specific purpose, while at the same time acknowledging and providing that such use shall be "subject to appropriation" by the Legislature, does not usurp the Legislature's role under art. 63.

We also reject the plaintiffs' claim that this measure is similar to the measure before the Justices in 1937, which provided that certain public monies "shall be expended only for highway purposes, including policing." As noted above, the Justices concluded that that measure constituted a spe-

---

[9]*Kelley* v. *Sullivan*, 201 Mass. 34, 35-36 (1909), relied on by the plaintiffs, is not controlling. In that case, the court was called upon to construe the verb "appropriate" as used in a corporation's by-laws. The court stated that "[t]o 'appropriate' money, or anything else, is to set it apart or assign it to a particular use or purpose." The court was not defining the concept of appropriation in a governmental sense. The court's definition would not be complete if used in that sense.

cific appropriation. *Opinion of the Justices*, 297 Mass. 577, 579-582 (1937). There are at least two important distinctions between that measure and the measure before us. First, as far as can be discerned from the Justices' opinion, that measure — unlike the measure before us — did not state expressly that the expenditure of the monies for the designated purposes would be "subject to appropriation" by the Legislature. Second, the measure in 1937 was a proposed constitutional amendment. Due to its constitutional nature, the measure would have left the Legislature with no choice but continually to expend the monies for the designated purposes, unless and until the amendment was repealed. That measure effectively would have bypassed the Legislature's power and discretion under art. 63.[10] The measure in this action, by contrast, is a proposed statute and not a constitutional amendment. It would not create the same permanently binding effect on the Legislature. The Legislature cannot, through enactment of an act or statute, bind itself or its successors to make a particular appropriation. See *Opinion of the Justices*, 302 Mass. 605, 610-611 (1939) ("One General Court cannot bind itself or its successors in this manner"). See also *Massachusetts Coalition for the Homeless* v. *Secretary of Human Servs.*, 400 Mass. 806, 816 (1987) (G. L. c. 29, § 7L,· "appears to be an impermissible attempt by one Legislature to dictate to subsequent ones the way in which constitutionally permissible legislative processes may work"). See also art. 48, The Initiative, II, § 2 ("limitations on the legislative power of the general court in the constitution shall extend to the legislative power of the people").

---

[10]Although the court's subsequent decision in *Evans* v. *Secretary of the Commonwealth*, 306 Mass. 296, 297-298 (1940), did not reach the issue, the decision makes clear that the Justices' conclusion in *Opinion of the Justices*, 297 Mass. 577 (1937), was limited to the earmarking of public monies through a constitutional amendment, and that the same does not apply necessarily to the earmarking of monies under a statute. Contrary to the plaintiffs' contention, nothing in our decisions in *Slama* or *Tax Equity Alliance* was intended to minimize the significance of the constitutional nature of the measure involved in the 1937 opinion.

The plaintiffs also attack the Attorney General's certification on a second ground. They claim the proposed measure is not a law and, therefore, is not in proper form for submission to the voters. Again we disagree.

Under art. 48, an initiative petition must propose either a constitutional amendment or a law. The petition involved in this action does not propose a constitutional amendment. The question is whether it proposes a law. "The word 'law' imports a general rule of conduct with appropriate means for its enforcement declared by some authority possessing sovereign power over the subject; it implies command and not entreaty; it is something different in kind from an ineffectual expression of opinion possessing no sanction to compel observance of the views announced." *Opinion of the Justices*, 262 Mass. 603, 605 (1928). Accord *Paisner* v. *Attorney Gen.*, 390 Mass. 593, 598-601 (1983); *Cohen* v. *Attorney Gen.*, 357 Mass. 564, 569-570 (1970).

The plaintiffs argue that, by relying on Federal law to define which hazardous material would be subject to the excise, the measure is too indefinite to constitute a law. They claim that the Federal authorities might amend their list of hazardous substances or classification of toxic chemicals, and that this would change the class of hazardous material which is subject to the excise. Assuming that is true, it does not render the measure too indefinite to be a law. At any given time, an individual or entity would be able to determine exactly which substances and chemicals are listed and classified and, thus, which material is subject to the excise.[11]

By the terms of this measure, payment of the excise would be mandatory, not optional. The excise would be payable to the Commonwealth and enforceable in the courts of the

---

[11]The plaintiffs concede they are not arguing that the incorporation of Federal law into the measure would constitute an impermissible delegation of the Commonwealth's legislative power to the Federal authorities. Therefore we do not decide whether there would be an impermissible delegation in these circumstances. *Opinion of the Justices*, 239 Mass. 606, 610 (1921), relied on by the plaintiffs, is distinguishable because it dealt with an impermissible delegation issue and must be read in that context.

Commonwealth. A failure to abide by it would subject an individual or entity to civil and criminal liability and sanctions. In these respects, the measure definitely proposes a law.

*Summary.* The plaintiffs attack the Attorney General's summary of the measure on two grounds. First, they claim the summary does not fairly inform the voters which hazardous material would be subject to the excise or that the class of material subject to the excise might change if, in the future, the Federal authorities amend their list of hazardous substances or classification of toxic chemicals under Federal law. Second, the plaintiffs claim that the summary does not inform the voters fairly of the significance of the fact that the expenditure of monies from the Environmental Challenge Fund would be "subject to appropriation" by the Legislature. We disagree with both claims.

Under art. 48, as amended by art. 74 of the Amendments, the Attorney General must prepare a summary which is both fair and concise. "A summary is an abridgment, abstract, compendium, or epitome. The word carries with it the idea that, however much the subject matter may be condensed, the sum and substance of it must remain. No doubt details may be omitted or in many instances covered by broad generalizations, but mention must be made of at least the main features of the measure. And the summary must be 'fair'; that is to say, it must not be partisan, colored, argumentative, or in any way one sided, and it must be complete enough to serve its purpose of giving the voter who is asked to sign a petition or who is present in a polling booth a fair and intelligent conception of the main outlines of the measure." *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310, 324 (1951). The Attorney General's judgment concerning the form and content of the summary is entitled to some deference. We will not substitute our judgment for the Attorney General's over "a matter of degree." *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 229-230 (1981).

The summary involved here informs the voters, among other things, that the excise would apply to hazardous substances which are listed, and toxic chemicals which are classified, by the Federal Environmental Protection Administration pursuant to Federal law. That is, without doubt, the "sum and substance" of the measure's definition of which hazardous material would be covered. The summary also sets forth the measure's numerous exceptions and exclusions. In our opinion, nothing of significance would be gained by requiring the Attorney General to include either the legal citations to the specific Federal law involved or the fact that the measure refers to the Federal law "as amended." The summary is not unfair or misleading without these matters. To include them might actually tend to "confuse rather than clarify." *Massachusetts Teachers Ass'n, supra* at 228, quoting *Opinions of the Justices*, 357 Mass. 787, 800 (1970).

On the subject of how the excise revenue would be used, the summary states that it would be used, "subject to legislative appropriation," to assess and clean up contaminated sites and to implement and enforce the excise. The plaintiffs argue that the summary does not fairly inform the voters that, in the Legislature's discretion, the monies could be spent for other purposes. Again, however, we believe the summary fairly states the "sum and substance" of the measure. The use of the phrase "subject to legislative appropriation" is not inaccurate, since it tracks the basic language of the measure. Nor is that phrase misleading, since it apprises the voters both that the expenditure of monies for the stated purposes would be contingent on ("subject to") an action of the Legislature, and exactly what that action is ("appropriation").

The measure does not expressly state that the monies may be used for purposes other than those set forth in G. L. c. 29, § 2J. To require the Attorney General to state that the monies could be spent for other purposes would, in essence, require him to state a legal interpretation of the measure. Nothing in art. 48 requires the summary to include legal analysis or an interpretation.

*Conclusion.* We remand this action to the county court for entry of a judgment declaring that the Attorney General's certification and summary of this petition are in compliance with the requirements of art. 48.

*So ordered.*