Tax Equity Alliance for Massachusetts & others[1] *vs.*
Commissioner of Revenue.

Suffolk. September 9, 1996. - November 8, 1996.

Present: Wilkins, C.J., Abrams, Greaney, & Fried, JJ.

*Taxation,* Income tax. *Practice, Civil,* Standing. *Constitutional Law,* Standing. *Mandamus.*

Individual plaintiffs seeking to challenge the constitutionality of certain provisions of St. 1994, c. 195, which amended G. L. c. 62, the statute governing the State taxation of capital gains, did not have standing to maintain their action, where the act in question, pertaining exclusively to the raising of revenue, did not authorize the expenditure of money or the incurrence of obligation so as to bring it within the purview of an asserted challenge under G. L. c. 29, § 63 [711-714]; nor did the plaintiffs have standing under the so-called "public right doctrine" where that does not apply to a challenge to the constitutionality of a statute [714-715].

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on February 9, 1995.

The case was reported by *Lynch,* J.

*Carl Valvo* (*Paul R. McDaniel & Peter Enrich* with him) for the plaintiffs.

*Thomas A. Barnico,* Assistant Attorney General (*Jane L. Willoughby,* Assistant Attorney General, with him) for the defendant.

*Edward F. Hines, Jr., & Sarah Chapin Columbia,* for Massachusetts High Technology Council, Inc., & others, amici curiae, submitted a brief.

*Stephen Ostrach* for Associated Industries of Massachusetts & another, amici curiae, submitted a brief.

Greaney, J. The plaintiffs, the Tax Equity Alliance for Massachusetts and twenty-five taxpayers (we shall refer to the latter as individual plaintiffs), filed a complaint in the Supreme Judicial Court for Suffolk County against the defendant, the

[1] Twenty-five taxpayers of the Commonwealth.

Commissioner of Revenue (commissioner). In their complaint, the plaintiffs challenged the constitutionality of certain provisions of St. 1994, c. 195 (act), which amended G. L. c. 62, the statute governing the State taxation of capital gains. The plaintiffs allege that the act violates art. 44 of the Amendments to the Constitution of the Commonwealth, which provides for a single rate of taxation on income derived from the same "class" of property.[2] Specifically, the plaintiffs argue that the various divisions of capital gain income subject to taxation under the act are all income derived from the same class of property, namely capital assets, and that, under art. 44, such income can only be taxed at a uniform rate. The plaintiffs also argue, relying principally on *Salhanick* v. *Commissioner of Revenue*, 391 Mass. 658, 662 (1984), that the length of time that a capital asset is held does not create an actual difference between properties sufficient to create a different "class of property," thereby supporting a different tax rate.

In their complaint, the plaintiffs sought declaratory relief and an order enjoining the commissioner from expending money or otherwise incurring obligations in implementing the act, together with an order requiring the commissioner to administer the laws concerning the taxation of capital gains as they stood before the act. The commissioner filed a motion to dismiss the complaint on the ground that the plaintiffs lacked standing to sue. A single justice denied the motion to dismiss. The parties filed cross motions for summary judgment, and the single justice reserved and reported the case to the full court. We conclude that the plaintiffs lack standing to bring this action. We therefore grant the commissioner's motion to dismiss and as a result do not reach the merits.

---

[2]Article 44 of the Amendments to the Constitution of the Commonwealth reads in part as follows:

> "Full power and authority are hereby given and granted to the general court to impose and levy a tax on income in the manner hereinafter provided. Such tax may be at different rates upon income derived from different classes of property, but shall be levied at a uniform rate throughout the commonwealth upon incomes derived from the same class of property. The general court may tax income not derived from property at a lower rate than income derived from property, and may grant reasonable exemptions and abatements."

Since 1980, Massachusetts has imposed different rates of tax on income from capital gains, based on the length of time the underlying capital asset was owned by the taxpayer. G. L. c. 62, § 2 (*c*) (3).[3] The Massachusetts statute incorporated definitions of long-term and short-term capital gains and net capital gains from Federal law and adopted Federal gross income as the base for determining Massachusetts gross income. See G. L. c. 62, § 1 (*m*), inserted by St. 1986, c. 488, § 23, referencing 26 U.S.C.A. § 1222 (1988 ed. & 1996 Supp.); G. L. c. 62, § 2 (*b*) (1). Section 2 (*b*) of G. L. c. 62 divided Massachusetts gross income into two classes, Part A and Part B. "Part A gross income" consisted of total interest, dividends, and capital gain net income, with certain exclusions. G. L. c. 62, § 2 (*b*) (1). Part B gross income was defined as "the remainder of the Massachusetts gross income." G. L. c. 62, § 2 (*b*) (2). Under G. L. c. 62, § 2 (*c*), "Part A adjusted gross income" consisted of Part A gross income less certain deductions, including a deduction for certain net capital losses, § 2 (*c*) (2), and a deduction for "fifty per cent of the net capital gain" after any specific deduction.[4] G. L. c. 62, § 2 (*c*) (3). Thus, under Massachusetts tax law prior to the act, income derived from the sale of capital assets was taxed at ten per cent, but a taxpayer could claim a net fifty per cent deduction on gains from assets held one year or longer, effectively taxing such gains at five per cent. G. L. c. 62, § 2 (*c*) (3), § 4 (a).

The act[5] modified this method of taxation. Section 5 of the act revised the definition of the term "capital asset" in § 1 (*m*) of G. L. c. 62 and added a definition of the term "capital gain income," namely, "gain from the sale or exchange of a capital asset." Section 8 of the act created a new "Part C"

---

[3]The references in this paragraph are to the tax laws in existence prior to the act. The portions of G. L. c. 62 that first provided for varying tax rates on capital gains were enacted by St. 1979, c. 409, § 2.

[4]"[N]et capital gain" was defined in G. L. c. 62, § 1 (*m*), by reference to 26 U.S.C. § 1222, which defines the term as "the excess of the net long-term capital gain for the taxable year over the net short-term capital loss for such year." "Long-term capital gain" is defined in 26 U.S.C. § 1222, as the "gain from the sale or exchange of a capital asset held for more than one year."

[5]The act was approved on December 9, 1994, and became effective on March 9, 1995. G. L. c. 62, §§ 1-5 (1994 ed.). Section 30 of the act made its provisions applicable to tax years beginning on or after January 1, 1996.

gross income, defined as "[g]ain income from the sale or exchange of capital assets held for more than one year." Under the act, Part C "gross income" is subdivided into six classes, designated B through G (there is no Class A), each of which consists of gains from the sale or exchange of capital assets over a specified period. The statutory period for Class B gain is more than one but not more than two years; for Class C gain, the period is more than two but not more than three years; for Class D gain, the period is more than three but not more than four years; and so on through Class G income, for which the prescribed period is more than six years. G. L. c. 62, § 2 (*b*) (3) (St. 1994, c. 195, § 10).

Similarly, Part C "adjusted gross income" is divided into six classes (B through G), each of which is the difference between gains from the sale or exchange of capital assets held for the period specified minus losses from the sale or exchange of other capital assets held for the same time period. G. L. c. 62, § 2 (*e*) (St. 1994, c. 195, § 14). Part C "taxable income" is Part C adjusted gross income less certain deductions and exemptions. G. L. c. 62, § 3 (*c*) (St. 1994, c. 195, § 19).

The tax on Part C taxable income is calculated by multiplying the net gain or loss within each class of Part C income times a different rate for each class as follows: five per cent for Class B; four per cent for Class C; three per cent for Class D; two per cent for Class E; one per cent for Class F; and zero per cent for Class G. G. L. c. 62, § 4 (St. 1994, c. 195, § 20).

1. The individual plaintiffs assert standing to challenge the act under G. L. c. 29, § 63 (1994 ed.), and under the so-called "public right doctrine." The commissioner, by means of the motion to dismiss, questions the individual plaintiffs' standing to challenge the constitutionality of the act on each basis.[6]

A. The individual plaintiffs first claim standing to challenge

---

[6]The plaintiffs do not allege any individual harm as a basis for standing. They appear to be concerned that the act will lead ultimately to the overall loss of tax revenues, thereby possibly creating a "deficiency [which will] fall in some manner in part upon [them as] petitioning taxpayers." *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310, 319 (1951). This general allegation of harm does not fulfil the requirement that the plaintiffs' rights must be impaired in order for them to maintain standing to challenge a law's constitutionality. See *Brookline* v. *Secretary of the Commonwealth*, 417 Mass. 406, 417 (1994); *Pratt* v. *Boston*, 396 Mass. 37, 42 (1985); *Hynson*,

the statute under G. L. c. 29, § 63 (1994 ed.), which allows not less than twenty-four taxable inhabitants to file a petition in equity to prevent the unlawful expenditure of public funds by an officer of the Commonwealth.[7] The language of the statute confers standing on qualified taxpayers when an officer of the Commonwealth is about to expend money for an unlawful purpose. Plaintiffs with standing under § 63 may proceed even if the public expenditure at issue is small and will have an almost indiscernible impact on them or on the treasury. See, e.g., *Colo* v. *Treasurer & Receiver Gen.*, 378 Mass. 550 (1979); *Gifford* v. *Commissioner of Pub. Health*, 328 Mass. 608 (1952).

The act does not directly authorize any expenditures; it is legislation directed exclusively at raising revenue. Therefore the plaintiffs do not come within the plain language of the statute. The individual plaintiffs direct attention to the undisputed fact that the commissioner will have to expend public funds in different ways in order to implement the act's provisions (printing forms, promulgating regulations), arguing that such indirect expenditures by the commissioner are sufficient to give them standing under § 63. Any expenditure of funds to *implement* the statute is distinct, however, from an express authorization of expenditures *within the statute*

---

*Westcott & Dunning, Inc.* v. *Commissioner of Pub. Health*, 346 Mass. 606, 610 (1964); *Kaplan* v. *Bowker*, 333 Mass. 455, 459 (1956).

Tax Equity Alliance for Massachusetts is described in the complaint as "an unincorporated association of citizens and taxpayers concerned with the promotion and attainment of tax equity in Massachusetts." This plaintiff makes no argument that it has separate standing apart from the individual plaintiffs, and we do not consider the question.

[7]Section 63 reads as follows:

"If a department, commission, board, officer, employee or agent of the commonwealth is about to expend money or incur obligations purporting to bind the commonwealth for any purpose or object or in any manner other than that for and in which such department, commission, board, officer, employee or agent has the legal and constitutional right and power to expend money or incur obligations, the supreme judicial or superior court may, upon the petition of not less than twenty-four taxable inhabitants of the commonwealth, not more than six of whom shall be from any one county, determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise or abuse of such right and power."

*itself*. See *Tax Equity Alliance for Mass., Inc.* v. *Commissioner of Revenue*, 401 Mass. 310, 314 (1987). Cf. *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310 , 315-317 (1951) (distinguishing between the "expenditure of public money" and the substance of the legal claim). As the act itself does not provide for any expenditures by the Commonwealth, there is no basis for the individual plaintiffs to challenge its constitutionality under G. L. c. 29, § 63. See *Amory* v. *Assessors of Boston*, 310 Mass. 199, 200 (1941) (the right to bring and maintain proceedings under taxpayer statutes measured entirely by words of statute), and cases cited.

The individual plaintiffs further suggest that, because similarly situated taxpayers would have standing under the municipal taxpayers' statute, G. L. c. 40, § 53 (1994 ed.), they have standing under § 63. As support for this contention, the individual plaintiffs point to a decision in which this court suggested the two taxpayer statutes should be given the same construction because of their similar language and thrust. See *Richards* v. *Treasurer & Receiver Gen.*, 319 Mass. 672, 674 (1946). Unlike its municipal counterpart, § 63 does not authorize taxpayer suits challenging State action that raises funds, but instead limits such suits to challenges to State expenditures.[8] This is a fundamental distinction. The Legislature enacted G. L. c. 29, § 63, in 1937, long after its municipal counterpart had been enacted and amended; the sole difference in the relevant portions of the two statutes is the Legislature's decision not to include the word "raise" in

---

[8]The relevant portion of the comparable municipal statute provides as follows:

"If a town, regional school district, or . . . any of its officers or agents are about to raise or expend money or incur obligations purporting to bind said town, regional school district, or district for any purpose or object or in any manner other than that for and in which such town, regional school district, or district has the legal and constitutional right and power to *raise or expend* money or incur obligations, the supreme judicial or superior court may, upon petition of not less than ten taxable inhabitants of the town or not less than ten taxable inhabitants . . . determine the same in equity . . ." (emphasis added). G. L. c. 40, § 53 (1994 ed.).

enacting § 63.[9] The admittedly similar thrust of these two statutes does not provide sufficient support for what would be an unauthorized expansion of the jurisdiction of § 63. See *Green* v. *Wyman-Gordon Co.*, 422 Mass. 551, 555-556 (1996). We conclude that the individual plaintiffs do not have standing to challenge the act under G. L. c. 29, § 63.[10]

B. The individual plaintiffs also claim standing under the so-called "public right doctrine," which allows a citizen to bring an action for relief in the nature of mandamus to "procure the enforcement of a public duty." *Sears* v. *Treasurer & Receiver Gen.*, *supra* at 315, quoting *Brewster* v. *Sherman*, 195 Mass. 222, 224 (1907). Under the public right doctrine, any member of the public may seek relief in the nature of mandamus to compel the performance of a duty required by law. See *Kaplan* v. *Bowker*, 333 Mass. 455, 460 (1956). In such cases, the plaintiff acts under the public right to have a particular duty performed that the law requires to be performed. *Id.* Where the public right doctrine applies, the people are considered the real party in interest, and the individual plaintiff need not show that he has any legal interest in the result. *Brewster* v. *Sherman*, *supra.*

The public right doctrine does not apply to a challenge to the constitutionality of a statute. See *Kaplan* v. *Bowker*, *supra* at 461, citing *Horton* v. *Attorney Gen.*, 269 Mass. 503, 508-509, 513-514 (1929). The plaintiffs in this case seek through their request for relief in the nature of mandamus to challenge the substantive constitutionality of the act. A court can inquire into the general constitutionality of a statute only at the instance of a plaintiff whose "liberty, rights, or property was invaded through its operation." *Kaplan* v. *Bowker*, *supra.*

---

[9]General Laws c. 40, § 53, was originally enacted by St. 1847, c. 37, and has been frequently amended. See *Dowling* v. *Assessors of Boston*, 268 Mass. 480, 483-484 (1929) (detailing legislative history of G. L. c. 40, § 53, and noting that the words " 'to raise money' . . . commonly mean to raise by taxation").

[10]The present case differs from other cases relied on by the individual plaintiffs in which the taxpayers could show individualized standing independent of a taxpayer statute. Cf. *Tax Equity Alliance for Mass., Inc.* v. *Commissioner of Revenue*, 401 Mass. 310, 313 (1987) (individual plaintiffs have standing as citizens and qualified voters to raise a challenge to the use of the initiative process to adopt a tax statute); *Massachusetts Taxpayers Found., Inc.* v. *Secretary of Admin.*, 398 Mass. 40, 41 n.3 (1986) (taxpayers' standing "apparent" where graduated system of exemptions from Massachusetts personal income tax was at issue).

As noted above, the individual plaintiffs have alleged no personal harm or infringement on their rights resulting from the act. The public right doctrine thus does not provide them with a means for asserting standing in this case.

The plaintiffs argue, nonetheless, that this court's decision in *Sears* v. *Treasurer & Receiver Gen.*, *supra*, allows them to bring an action under the public right doctrine to challenge the act. In *Sears*, the plaintiffs were allowed to maintain an action seeking relief in the nature of mandamus under the doctrine to prevent the Commonwealth from paying out any money, or taking any action, under a law enacted by initiative. The constitutional challenge brought by the plaintiffs in *Sears* was based on their claims that the new law was invalid because the *procedure* used to adopt it violated specific provisions of the Massachusetts Constitution. *Sears* v. *Treasurer & Receiver Gen.*, *supra* at 313. While the public right doctrine has frequently been used as a basis for standing in cases where the procedure used to enact a statute is constitutionally questionable, see *Tax Equity Alliance for Mass., Inc.* v. *Commissioner of Revenue*, 401 Mass. 310, 313 (1987) (citizens have standing to raise a challenge to the use of the initiative process); *Backman* v. *Secretary of the Commonwealth*, 387 Mass. 549, 554 n.4 (1982) (citizen and qualified voter has standing to challenge enactment procedures), it has not been used to grant standing to plaintiffs bringing substantive constitutional challenges. See *Massachusetts Taxpayers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 214-215 (1981) (citizens have standing to challenge the constitutionality of the enactment of a statute, but separate standing is required to challenge substantive provisions). Therefore, the public right doctrine cannot be used as a basis for standing by the plaintiffs in this case.

2. The question of standing is one of critical significance. "From an early day it has been an established principle in this Commonwealth that only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of the government." *Doe* v. *The Governor*, 381 Mass. 702, 704 (1980), quoting *Kaplan* v. *Bowker*, *supra* at 459. See *McGlue* v. *County Comm'rs of Essex*, 225 Mass. 59, 60 (1916), and cases cited; *Wellington, petitioner*, 16 Pick. 87, 95-97 (1834)

(separation of powers demands that a statute can be declared unconstitutional only by action brought by affected party). Although the plaintiffs assert that it may be difficult to find a taxpayer who can actually claim harm because the act's reduced tax rates confer only benefits, nonetheless, the individual plaintiffs' difficulty in immediately identifying a plaintiff with proper standing does not foreclose the existence of any taxpayer who might be able to show harm under a proper set of facts. Further, an unfounded assumption that, if the individual plaintiffs lack standing, no one will have standing to sue, is not a reason to find standing where none exists. *Valley Forge Christian College* v. *Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982).

3. This is not a case in which we choose to exercise discretion under the principles stated in *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722 (1943), to reach the merits. The tax issues involved are complex, and we are in an area in which the Legislature has a considerable range of discretion "within the bounds of reason" to define and designate different classes. *Daley* v. *State Tax Comm'n*, 376 Mass. 861, 866 (1978). See *Andover Sav. Bank* v. *Commissioner of Revenue*, 387 Mass. 229, 235 (1982). Before an analysis under art. 44 is undertaken on a major piece of tax legislation, there must be a plaintiff or plaintiffs with proper standing to assert the constitutional challenge.

4. The order denying the commissioner's motion to dismiss is vacated. An order is to enter in the county court allowing the motion, followed by a judgment dismissing the complaint on the ground that the plaintiffs lack standing to sue.

*So ordered.*