ALLIANCE, AFSCME/SEIU, AFL-CIO, & ANOTHER[1] *vs.*
COMMONWEALTH & others[2]; THE GOVERNOR, intervener.

Suffolk. May 7, 1998. - June 1, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Mandamus. Practice, Civil,* Standing. *Constitutional Law,* Separation of pow-
ers.

In an action brought in the Supreme Judicial Court by unions representing
certain State employees, seeking relief in the nature of mandamus to
require the Commissioner of Public Health to comply with language in a
legislative provision vetoed by the Governor, this court concluded that the
unions lacked standing to seek such relief and the matter was ordered
dismissed for lack of jurisdiction. [548-551]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on January 13, 1998.

The case was reported by *Ireland,* J.

*Susan Jacobson* for the plaintiffs.

*Michael J. Tuteur,* Special Assistant Attorney General, for the
intervener.

*Peter Sacks,* Assistant Attorney General, for the defendants.

FRIED, J. The plaintiffs are labor organizations that represent
certain State employees. In a complaint filed in the county
court, they contend that the Governor's purported disapproval
of a clause requiring not less than thirty-nine full-time
equivalent positions as part of a budget item providing funding
for early intervention services to children under the age of three
and their families is an invalid exercise of the Governor's
authority. They seek an order requiring the Commissioner of the
Department of Public Health (department), who administers the
programs, to comply with the language in the budget item
without regard to the Governor's disapproval. A single justice
reserved and reported the matter to the full court. We conclude

[1]Local 509, Service Employees International Union, AFL-CIO, CLC.
[2]Department of Public Health and the Commissioner of Public Health.

that the plaintiffs lack standing to seek such an order and remand the case to the single justice to enter an order dismissing the action for lack of jurisdiction.

## I

As it had done in three preceding years, in 1997 the Legislature enacted a bill for the succeeding year's budget funding "a program of maternal and child health" and included the following provision in Line Item 4513-1000:

> "For the operation of the division of family health services, including a program of maternal and child health in addition to any federal funds received for this program, . . . *provided further, that the [department] shall fund not less than 39 full time equivalent employees for the early intervention program* . . . $32,425,439" (emphasis added).

As he had done in preceding years, the Governor exercised his power under art. 63, § 5, of the Massachusetts Constitution, as amended by art. 90, § 4, of the Amendments,[3] to disapprove the italicized portion of the proviso.

The plaintiffs' complaint seeks relief in the nature of mandamus ordering the commissioner to comply with what the plaintiffs refer to as a ministerial duty to comply with the appropriation as written by the Legislature, without regard to the Governor's disapproval of the proviso. The same plaintiffs previously had brought an action seeking a declaration invalidating the Governor's disapproval of this proviso in the Com-

---

[3]Article 63, § 5, of the Massachusetts Constitution, as amended by art. 90, § 4, of the Amendments, provides:

> "The governor may disapprove or reduce items or parts of items in any bill appropriating money. So much of such bill as he approves shall upon his signing the same become law. As to each item disapproved or reduced, he shall transmit to the house in which the bill originated his reason for such disapproval or reduction, and the procedure shall then be the same as in the case of a bill disapproved as a whole. In case he shall fail so to transmit his reasons for such disapproval or reduction within ten days after the bill shall have been presented to him, such items shall have the force of law unless the general court by adjournment shall prevent such transmission, in which case they shall not be law."

monwealth's budget for the fiscal year 1996. *Alliance, AFSCME/ SEIU* v. *Commonwealth*, 425 Mass. 534 (1997) (*Alliance I*). In *Alliance I*, we concluded:

> "If the Attorney General takes the position, as he has here, that he agrees with the plaintiffs and that he will not defend the action, either on his own account or by appointing a special assistant attorney general to defend the action on behalf of the named executive officer . . . the constitutional and statutory position of the Attorney General carries the implication that those parties have simply declined, through their attorney, to defend. As a result, there is no 'controversy between the *parties*' before the court, as our reading of the declaratory judgment statute demands."

*Id.* at 537-538. No doubt encouraged by a footnote in that decision that stated that "[a]n appropriate party might also seek mandamus against the official charged with the administration of the law, requiring him to perform what may be a ministerial duty under the statute, thus bringing into question whether the statute has indeed validly imposed such a duty on that official in light of the Governor's veto," *id.* at 539 n.8, the plaintiffs have brought this action. Once again, the Attorney General aligns himself with the plaintiffs and allows the Governor to argue to us as an intervener.

## II

Respect for the separation of powers has led this court, like the Supreme Court and courts in other States, to be extremely wary of entering into controversies where we would find ourselves telling a coequal branch of government how to conduct its business. This danger is acutely present when the relief sought is not monetary damages but mandamus, compelling action by an officer of another department of government. Article 30 of our Declaration of Rights explains this principle as it applies to us: "[T]he judicial [department] shall never exercise the legislative and executive powers, or either of them."

Article 30 does, however, end by saying that the separation of powers must be observed "to the end [the government of this Commonwealth] may be a government of laws and not of men." And as Chief Justice Marshall once stated:

"The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation if the laws furnish no remedy for the violation of a vested legal right."

*Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 163 (1803). By insisting that the parties who seek our assistance have standing, that is "that a personal interest [be] *directly* affected," *Brookline* v. *The Governor*, 407 Mass. 377, 388 (1990) (Liacos, C.J., concurring), we respect both principles: no citizen whose rights have been infringed is left without a remedy; yet we do not intrude into the business of a coequal branch in the course of a controversy that is to any degree remote or abstract.[4] That requirement of a concrete and particularized harm must be enforced with particular rigor in administering the writ of mandamus, which is especially intrusive and for that reason has always been seen as dependent on the discretion of the court. See *Lutheran Serv. Ass'n of New England* v. *Metropolitan Dist. Comm'n*, 397 Mass. 341, 345 (1986); *O'Donnell* v. *Board of Appeals of Billerica*, 349 Mass. 324, 328 (1965).

The plaintiff unions must have a particularized interest, personal to them, in order to have standing to seek mandamus. In their brief the plaintiffs do not argue that they have such a particularized interest, although the Attorney General's brief proposes that the unions have such a particularized interest because the persons to be hired under the proviso, though they cannot be individually identified in advance, would most likely be within the plaintiff unions' bargaining unit. At oral argument, it was suggested that the unions might for the same reason be the recipients of these persons' dues and that this too creates a sufficient interest in the unions. This is as close as the plaintiffs

---

[4]We note again, as we did in *Alliance, AFSCME/SEIU* v. *Commonwealth*, 425 Mass. 534, 539 (1997), that our Constitution does leave open an avenue to the Governor and to either House of the Legislature to seek the opinion of the Justices on just such a matter, and that opinion has been given quite frequently in respect to controversies concerning the validity of a Governor's disapproval of portions of enactments. See, e.g., *Opinion of the Justices*, 419 Mass. 1201 (1994); *Opinion of the Justices*, 411 Mass. 1201 (1991); *Opinion of the Justices*, 384 Mass. 828 (1981); *Opinions of the Justices*, 384 Mass. 820 (1981); *Opinion of the Justices*, 294 Mass. 616 (1936). We note, as we did before, that that opinion has not been sought, although this controversy has reappeared now in four successive budgets.

can come, and it is not close enough. The Attorney General and the plaintiffs elsewhere correctly point out that the proviso leaves the commissioner complete discretion as to whom to hire and at what professional level to fill the mandated full-time equivalent positions. The connection between the plaintiffs and this very broad range of potential State employees is too remote. Furthermore, even if we accepted the plaintiffs' unsupported hypothesis, we have made it clear that a professional organization does not have standing to seek mandamus on its members' behalf. *Massachusetts Soc'y of Graduate Physical Therapists, Inc.* v. *Board of Registration in Medicine,* 330 Mass. 601, 606 (1953). This once again is because of our reluctance to intervene in an intergovernmental dispute unless particular harm to identified individuals can be shown.

We have departed from the requirement of a particularized interest where the plaintiff claims to be enforcing a "public duty," rather than seeking a remedy for violation of his own rights. *Tax Equity Alliance for Mass.* v. *Commissioner of Revenue,* 423 Mass. 708, 714 (1996). Although this doctrine is not available to question the substantive constitutionality of an enactment, it may be used to question whether the procedures by which it was enacted conformed to the Constitution. *Id.* at 715. Thus it has been successfully invoked to seek a declaration that a certain measure could not properly be made a subject of the initiative procedure set forth in art. 48 of the Amendments to the Constitution. *Tax Equity Alliance for Mass., Inc.* v. *Commissioner of Revenue,* 401 Mass. 310, 313 (1987). See *Backman* v. *Secretary of the Commonwealth,* 387 Mass. 549, 554 n.4 (1982); *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth,* 384 Mass. 209, 214-215 (1981); *Sears* v. *Treasurer & Receiver Gen.,* 327 Mass. 310 (1951). It is a nice question whether the objection the plaintiffs raise counts as an objection to the procedure by which the Governor disapproved the duty imposed by the line item at issue, but we need not reach that particular question. Although we have often considered the validity of exercises of the Governor's line item veto power, we have never done so at the insistence of plaintiffs who claim no other standing than as citizens seeking to enforce a public duty. Because the "public duty" doctrine is in such obvious tension with our general jurisprudence requiring a rigorous application of the doctrine of standing, we are unwilling to extend it into new territory. Furthermore, we have not allowed its use by

other than natural persons, see *Pilgrim Real Estate, Inc.* v. *Superintendent of Police of Boston*, 330 Mass. 250, 253 (1953),[5] and we will not do so now.

We remand the action to the county court, where it shall be dismissed for lack of standing.

*So ordered.*

---

[5]*Concord* v. *Attorney Gen.*, 336 Mass. 17 (1957), which the plaintiffs' counsel brought to our attention during oral argument, is not to the contrary. In that case, this court allowed a town and a corporation to bring a mandamus petition to invalidate the Attorney General's disapproval of an amendment to the town's zoning bylaws. Although this court quoted the "public duty" doctrine language from *Kaplan* v. *Bowker*, 333 Mass. 455, 460 (1956), it went on to observe that the town and the corporation have particularized interests in invalidating the Attorney General's disapproval and granted standing on that ground. *Concord* v. *Attorney Gen.*, *supra* at 27-28. It follows that, at most, the *Concord* case stands for the proposition that non-natural persons can bring a mandamus petition, not that the public duty doctrine is available to non-natural persons. And even the former proposition is not clearly supported by the case. The *Concord* court stated: "[Mandamus] is available in proper cases to an individual who is a citizen and voter and thus interested in the execution of the laws." *Id.* at 27, quoting *Attorney Gen.* v. *Suffolk County Apportionment Comm'rs*, 224 Mass. 598, 610 (1916).