VICTOR A. PERELLA *vs.* MASSACHUSETTS TURNPIKE
AUTHORITY.

No. 00-P-505.

Middlesex. February 11, 2002. - July 29, 2002.

Present: MASON, COHEN, & MILLS, JJ.

*Massachusetts Turnpike Authority. Mandamus. Practice, Civil,* Action in
nature of mandamus, Standing.

A plaintiff seeking relief in the nature of mandamus against the Massachusetts
Turnpike Authority (authority) did not have standing to maintain his action
under the "public right doctrine," where the plaintiff sought not to enforce
a clear and unequivocal duty of the authority, but rather to reverse a
discretionary decision (specifically, to provide access to a landlocked
interior parcel of land, leased to a private developer, through the construc-
tion of a road and bridge on an adjacent parcel) that was well within the
authority's statutory responsibilities. [539-541]

CIVIL ACTION commenced in the Superior Court Department on
October 6, 1999.

A motion to dismiss was heard by *Elizabeth M. Fahey,* J.

*Richard d'A. Belin* for the defendant.

*Victor A. Perella,* pro se.

MILLS, J. This is another case challenging action by the Mas-
sachusetts Turnpike Authority (authority) with respect to land in
the vicinity of the cloverleaf at exit 12 of the Massachusetts
Turnpike (turnpike).[1] Victor Perella, proceeding pro se, sought
mandamus relief to compel the authority to comply with the
"law of the Commonwealth," and to continue to use land
exclusively for a "park & ride" facility (parking facility). The
authority moved to dismiss pursuant to Mass.R.Civ.P. 12(b)(1)
and (6), 365 Mass. 754 (1974). This is an appeal from a Superior

[1] See *HTA Limited Partnership* v. *Massachusetts Turnpike Authority,* 51
Mass. App. Ct. 449 (2001); *Hanna* v. *Massachusetts Turnpike Authority,* 52
Mass. App. Ct. 1103 (2001).

Court judge's order allowing the authority's motion to dismiss on the ground that the plaintiff has no standing and that mandamus relief is not appropriate because his claims are not cognizable. We affirm.

*Facts.* We consider whether the plaintiff has alleged facts sufficient to withstand the authority's motion in light of familiar principles set forth in *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). The plaintiff is a Framingham resident and a frequent user of both the turnpike and a parking facility located on the turnpike at exit 12. In 1994, the authority examined various methods of alleviating single-occupancy vehicle traffic on the turnpike and made a policy decision to develop parking facilities along the roadway. The authority subsequently took by eminent domain a 5.27 acre parcel of land with approximately 520 feet of footage on Route 9, eastbound, in Framingham (parcel). At all relevant times, the authority has stated that the purpose and scope of the taking was to provide parking consistent with the needs determined by technical studies in furtherance of the Federal Clean Air Act, 42 U.S.C. § 7401 (1990), and the authority's park and ride policy.

In 1994 and 1995, structures on the parcel were demolished, and the property was paved and began to be used as a parking facility. In 1996, significant surveying activity occurred on the parcel, and designs to create an intersection on Route 9 directly in front of the parcel were discussed. In 1997, the authority leased, or agreed to lease, approximately 32 acres of other turnpike property, adjacent to the parking facility and inside the cloverleaf of exit 12, to a private real estate developer for use as a hotel/office park complex (interior parcel). As part of the arrangement, the authority was to provide access to the otherwise landlocked interior parcel by constructing a road and a bridge across the parking facility and into the interior parcel. In 1998, the authority began construction of the road and bridge connecting the parking facility to the interior parcel.

The plaintiff's complaint does not allege how much of the parking facility would be used to create access to the interior parcel, nor does it allege that the new road and bridge could not coexist with the remainder of the parcel continuing to function as a parking facility. According to the complaint, the construc-

tion of the road and bridge provides a substantial benefit to the private developer who has leased the otherwise landlocked parcel from the authority. It is this private benefit to which the plaintiff objects.

*Discussion.* Where a plaintiff seeks mandamus relief, "[t]he question of standing is one of critical significance. 'From an early day it has been an established principle in this Commonwealth that only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of the government.' " *Tax Equity Alliance for Mass.* v. *Commissioner of Rev.*, 423 Mass. 708, 715 (1996), quoting from *Doe* v. *The Governor*, 381 Mass. 702, 704 (1980). Ordinarily, "[a]lleging '[i]njury alone is not enough; a plaintiff must allege a breach of duty owed to [him] by the public defendant.' Injuries that are speculative, remote, and indirect are insufficient to confer standing. 'Not every person whose interests might conceivably be adversely affected is entitled to [judicial] review.' Moreover, the complained of injury must be a direct consequence of the complained of action. 'To have standing in any capacity, a litigant must show that the challenged action has caused the litigant injury.' " (Citations omitted.) *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 323 (1998).

In this case, the plaintiff acknowledges that he has no personal interest in the claim, but asserts that his standing to proceed is enhanced by the "public right doctrine," through which a citizen may "bring an action for relief in the nature of mandamus to 'procure the enforcement of a public duty.' " (Citations omitted.) *Tax Equity Alliance for Mass.* v. *Commissioner of Rev.*, 423 Mass. at 714, quoting from *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310, 315 (1951).

> "Under the public right doctrine, any member of the public may seek relief in the nature of mandamus to compel the performance of a duty required by law. In such cases, the plaintiff acts under the public right to have a *particular duty* performed that the law requires to be performed. Where the public right doctrine applies, the people are considered the real party in interest, and the individual

plaintiff need not show that he has any legal interest in the result." (Citations omitted; emphasis supplied.)

*Ibid.*

In considering requests for mandamus, the "concrete and particularized harm" requirement must be enforced rigorously and, thus, construed narrowly. *Alliance, AFSCME/SEIU, AFL-CIO* v. *Commonwealth,* 427 Mass. 546, 549 (1998). "Because the 'public duty' [i.e., public right] doctrine is in such obvious tension with our general jurisprudence requiring a rigorous application of the doctrine of standing, we are unwilling to extend it into new territory." *Id.* at 550. This doctrine applies only "where a public officer owes a *specific duty* to the public to perform some act or service not due the government as such or to administer some law for the public benefit which he is refusing or failing to perform or administer . . . ." (emphasis supplied). *Kaplan* v. *Bowker,* 333 Mass. 455, 460 (1956). Only then can a person suffering the legal harm "compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of the government." *Id.* at 459.

The public right doctrine cannot be invoked for broad purposes, such as to challenge the substantive constitutionality of a statute, *Tax Equity Alliance for Mass.* v. *Commissioner of Rev.,* 423 Mass. at 714, and, although officials "are obligated to obey the law, . . . that obligation, without more, is not a sufficient ground for action by persons who are not injured." *Kaplan* v. *Bowker,* 333 Mass. at 460-461. As the authority correctly points out, the public right doctrine has always been limited to the enforcement of clear and unequivocal duties, such as election officials' duty to count ballots correctly, *Brewster* v. *Sherman,* 195 Mass. 222, 225 (1907); the Secretary of the Commonwealth's duty to omit from the ballot an initiative question where the petition failed to describe the proposed law accurately, *Brooks* v. *Secretary of the Commonwealth,* 257 Mass. 91, 93-94 (1926); and the Boston building commissioner's duty to deny a permit where the proposed building would plainly violate a statute, *Bancroft* v. *Building Commr. of Boston,* 257 Mass. 82, 84-85 (1926).

There is no such clear and unequivocal duty here. Rather, the plaintiff seeks to reverse a discretionary decision that was well within the statutory responsibilities of the authority[2] and cannot be enforced by mandamus. See *Ames* v. *Attorney Gen.*, 332 Mass. 246, 250-252 (1955); *Berman* v. *Board of Registration in Med.*, 355 Mass. 358, 360 (1969); *Angelico* v. *Commissioner of Ins.*, 357 Mass. 407, 411 (1970). The authority, as landowner, owns the landlocked interior parcel and the adjacent parcel used as a parking facility. As a matter of business discretion, the authority determined to use a part of the parking facility to access the interior parcel. This was within the management prerogative intended in the authorizing legislation. See G. L. c. 81A, §§ 4, 16. As the public right doctrine does not apply, the plaintiff must show injury in fact, which by his own admission he cannot. Therefore, the plaintiff's claim fails for lack of any standing.

*Judgment affirmed.*

---

[2]The authority is authorized to own, maintain, improve, use, administer, control and operate the turnpike, which includes the highway itself together with the interchanges, parking facilities, approaches, and connecting highways. G. L. c. 81A, §§ 1, 3, 4(*e*). Much administrative authority is explicitly a matter of discretion. See, e.g., G. L. c. 81A, § 4. The authority is explicitly authorized to lease and dispose of real property "in the exercise of its powers and the performance of its duties pursuant to [chapter 81A]." G. L. c. 81A, § 4(*l*). And, it is "authorized and empowered . . . to make and enter into all contracts and agreements necessary, convenient or desirable in the performance of its duties and the execution of its powers under [chapter 81A]." *Ibid.* The authority's discretion is not unlimited; for example, eminent domain takings by the authority may be exercised only for a public purpose. *Luke* v. *Massachusetts Turnpike Authy.*, 337 Mass. 304, 309 (1958). Even so, it is clear that the Legislature intended the authority to have general management responsibilities. *Levy* v. *The Acting Governor*, 435 Mass. 697, 702 n.8 & 704 (2002) (describing legislative intent behind the powers granted to the authority).