NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

22-P-1017                                        Appeals Court

NICOLE KENN vs. EASCARE, LLC.

No. 22-P-1017.

Norfolk.      September 12, 2023. – January 8, 2024.

Present: Massing, Henry, & Brennan, JJ.

Employment. Jurisdiction. Practice, Civil, Standing, Motion to
     dismiss.

Civil action commenced in the Superior Court Department on December 5, 2019.

A motion to dismiss was heard by Sharon E. Donatelle, J.; a motion for reconsideration was considered by her; and entry of separate and final judgment was ordered by Paul D. Wilson, J.

Raven Moeslinger for the plaintiff.
Sarah C. Spatafore for the defendant.

MASSING, J. In this appeal we consider whether the

plaintiff job applicant, who authorized a potential employer to

conduct a background check under conditions that allegedly

violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681w

(FCRA), has standing to sue where the plaintiff does not allege

that the employer's FCRA violations caused her any "concrete" injury as that term has been construed in the context of art. III of the United States Constitution (art. III).  Based on the provisions of FCRA that establish the employer's liability for willfully violating FCRA's requirements and provide a cause of action for plaintiffs who are subject to such violations, we conclude that the plaintiff does have standing in the courts of the Commonwealth.  Accordingly, the defendant's motion to dismiss two counts of the plaintiff's complaint for lack of subject matter jurisdiction should have been denied.  We therefore vacate the separate and final judgment.

Background.  The plaintiff, Nicole Kenn, filed a four-count complaint in the Superior Court in December 2019 including, in counts III and IV, putative class action claims alleging that defendant, Eascare, LLC (Eascare), had violated certain provisions of FCRA.[1]  The complaint and attached exhibits alleged the following facts, which we are bound to accept as true for the purposes of this appeal.  See Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011).

---

[1] The first two counts of the complaint alleged a claim of nonpayment of wages against Eascare and Mark E. Brewster and a claim of sex discrimination against Eascare and Joseph Hughes. By stipulation of the parties, these claims were ultimately dismissed with prejudice.

Eascare is a Massachusetts limited liability company that provides ambulance services. Eascare conducts background checks, which are governed by FCRA, when it makes employment decisions. In January 2018, the plaintiff applied for a position as an emergency medical technician. Eascare provided the plaintiff with a combined disclosure and authorization form regarding the background check, entitled "Consumer Report/Investigative Consumer Report Disclosure and Release of Information Authorization." The front side of the form asked the plaintiff to acknowledge her understanding that Eascare would conduct a background check on her for employment purposes, which might include obtaining a "consumer report" or an "investigative consumer report" as defined under FCRA. The disclosure form included explanations of what the background investigation might entail, what would happen in the case of an adverse employment decision, and what an applicant could do if she disagreed with the accuracy of any information contained in the consumer report. The bottom of the form sought the plaintiff's authorization for Eascare to conduct the background check. The back side of the form sought her authorization for an entity named PT Research "to furnish the above information" and for the plaintiff to "release[] and forever discharge[]" PT Research, Eascare, "and any person/entity from which they obtained information from any liability resulting from providing

such information."  The plaintiff signed both sides of the form and was subsequently hired, but resigned within a year.[2]

The complaint alleged that Eascare willfully provided a disclosure and authorization form that violated FCRA, injuring the plaintiff and those similarly situated, as follows:

> "25.  Without a clear notice that a consumer report is going to be procured on them, applicants like [the plaintiff] have no way to preserve their privacy or to correct errors or other problems with the reports.
>
> "26.  When a disclosure and authorization contains an exculpatory clause such as the release of liability in Eascare's Disclosure Form, applicants like [the plaintiff] are misinformed about their legal rights and whether or how they may enforce them.
>
> "27.  As a result, Eascare's purported disclosure and authorization was not clear, conspicuous or stand-alone, nor did it validly authorize Eascare to procure [the plaintiff's] consumer report for employment purposes.
>
> "28.  Eascare's actions resulted in depriving [the plaintiff] of a clear recitation of her rights and invaded her privacy, including by disseminating [the plaintiff's] private information without proper authorization."

The complaint further alleged that Eascare had obtained consumer reports for job applicants, using forms either identical or substantially similar to the disclosure form that the plaintiff received, for at least five years.

After the plaintiff filed her complaint, Eascare removed the case to the United States District Court for the District of

---

[2] Her complaint alleged that she was constructively discharged because of a hostile work environment.

Massachusetts pursuant to 28 U.S.C. § 1441(a) and there moved to dismiss the plaintiff's FCRA claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. A United States District Court judge granted Eascare's motion to dismiss, concluding that the plaintiff lacked standing under art. III because she failed to allege a "concrete" injury. Kenn v. Eascare, LLC, 483 F. Supp. 3d 26, 32 (D. Mass. 2020). The judge initially ordered that the FCRA claims be dismissed without prejudice, but acting on the plaintiff's motion for reconsideration, vacated the dismissal and instead remanded the claims to the Superior Court.[3]

Back in the Superior Court, Eascare moved to dismiss the plaintiff's FCRA claims pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), for lack of standing. A Superior Court judge allowed the motion, largely adopting the reasoning of the United States District Court judge.[4] The plaintiff filed a motion for reconsideration, which the motion judge denied. The plaintiff subsequently filed a motion under Mass. R. Civ. P.

---

[3] The judge agreed with the plaintiff that under 28 U.S.C. § 1447(c), when a case is removed from State court to Federal court and the judge determines that the Federal court lacks subject matter jurisdiction, the case is to be remanded to State court rather than dismissed.

[4] As the plaintiff's State law claims for nonpayment of wages and sex discrimination were still pending at the time, the plaintiff filed an application for interlocutory review of the order dismissing the FCRA claims under G. L. c. 231, § 118, first par., which a single justice of this court denied.

54 (b), 365 Mass. 820 (1974), for separate and final judgment on the FCRA claims. A second judge allowed the motion, and final judgment dismissing the plaintiff's FCRA claims was entered in August 2022. The plaintiff timely filed a notice of appeal from the separate and final judgment dismissing the FCRA claims.

Discussion. 1. FCRA. The plaintiff claimed that Eascare willfully violated the provisions of FCRA in two ways. In count III of her complaint, the plaintiff alleged that Eascare obtained her consumer report without providing a stand-alone, clear and conspicuous disclosure form, in violation of 15 U.S.C. § 1681b(b)(2)(A)(i). In count IV, the plaintiff alleged that because she agreed to the background check based on documents that did not comply with FCRA, Eascare obtained her consumer report without valid authorization, in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii).[5]

---

[5] The full text of 15 U.S.C. § 1681b(b)(2)(A) is as follows:

"(2) Disclosure to consumer

"(A) In general. Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless --

"(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

Because we are reviewing the allowance of a motion to dismiss under Mass. R. Civ. P. 12 (b) (6),[6] we accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  See Curtis, 458 Mass. at 676.  Thus, although the front side of the disclosure and authorization form attached to the complaint is arguably in compliance with FCRA, we must assume for the purposes of this appeal that the releases of liability appeared on the back side of the same form, such that the plaintiff was not provided with "a document that consists solely of the disclosure."  15 U.S.C. § 1681b(b)(2)(A)(i).

Accordingly, we accept the allegations that Eascare willfully violated the provisions of FCRA in inducing the plaintiff's authorization for Eascare to obtain her consumer report.  In cases of willful violations, FCRA provides the following remedy:

> "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . any actual damages sustained by the

---

> "(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause [i]) the procurement of the report by that person."

[6] A motion to dismiss for lack of standing can be brought under either rule 12 (b) (1) or 12 (b) (6).  See Doe v. Governor, 381 Mass. 702, 705 (1980).

consumer as a result of the failure or damages of not less than $100 and not more than $1,000."

15 U.S.C. § 1681n(a)(1)(A).  The term "person" includes corporations, and the term "consumer" is defined as "an individual."  15 U.S.C. § 1681a(b), (c).  The remedy provision also authorizes punitive damages, costs, and reasonable attorney's fees for a successful action.  See 15 U.S.C. § 1681n(a)(2)-(3).[7]  The statute further provides that "[a]n action to enforce any liability created [by FCRA] may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction."  15 U.S.C. § 1681p.  Thus, FCRA clearly creates a cause of action for an individual, such as the plaintiff, against any person, such as Eascare, who willfully fails to comply with "any requirement" of FCRA.

2.  Art. III standing.  Despite having a cause of action, not every individual whose FCRA protections have been violated has standing to sue in Federal court.  Under art. III, Federal judicial power is limited to the resolution of "Cases" and "Controversies."  TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021) (TransUnion).  To have standing under art. III, a

---

[7] A person who negligently, as opposed to willfully, fails to comply with FCRA is liable for only "any actual damages sustained by the consumer as a result of the failure," costs, and attorney's fees.  15 U.S.C. § 1681o.

plaintiff must allege a "concrete" injury, that is, one that is "real" and not "abstract." Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016) (Spokeo). "For [art. III] standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." TransUnion, supra at 2205. While "Congress may enact legal prohibitions and obligations" and create causes of action to enforce them, "under Article III, an injury in law is not an injury in fact." Id. That is, to the extent Congress passes laws that authorize "unharmed plaintiffs" to sue for violations of Federal law, such laws are unconstitutional because they violate the doctrine of separation of powers. Id. at 2207.

The Spokeo and Transunion decisions clarified how art. III standing applies to violations of FCRA. In Spokeo, 578 U.S. at 336, an individual learned that a consumer reporting agency had generated a "profile" of the individual that contained inaccurate information. Reversing the decision of the United States Court of Appeals for the Ninth Circuit, which held that "the violation of a statutory right is usually a sufficient injury in fact to confer standing," id. at 337, the Supreme Court remanded the case for consideration of "whether the

particular procedural violations [of FCRA] alleged in this case entail a degree of risk [of harm to the plaintiff] sufficient to meet the concreteness requirement," id. at 342-343.

In TransUnion, a class of 8,185 individuals alleged that the defendant, one of the "Big Three" credit reporting agencies, had created credit reports that violated FCRA by falsely listed the plaintiffs as being on a government watchlist for terrorists, drug traffickers, and other serious criminals. See TransUnion, 141 S. Ct. at 2201. TransUnion had communicated to third parties the misleading credit report of 1,853 plaintiffs, but did not disseminate the misleading information maintained with respect to the rest. Id. at 2197. The Court held that only those plaintiffs whose information had been disclosed to third parties had suffered sufficiently concrete injuries to qualify for art. III standing. Id. at 2214.

Four justices dissented. An opinion joined by all four dissenters stated that the majority's analysis upended "centuries" of decisions holding "that injury in law to a private right was enough to create a case or controversy." TransUnion, 141 S. Ct. at 2218 (Thomas, J., dissenting). See Leardi v. Brown, 394 Mass. 151, 160 (1985), abrogated in part by Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503 (2013) (discussing Supreme Court cases holding that violations of legal rights create art. III standing absent any other injury).

Presaging the case before us, the dissent in TransUnion noted that the majority's analysis of art. III standing did not prevent State courts from adjudicating FCRA claims that could not be brought in Federal court:

> "The Court does not prohibit Congress from creating statutory rights for consumers; it simply holds that federal courts lack jurisdiction to hear some of these cases. That combination may leave state courts -- which 'are not bound by the limitations . . . of justiciability even when they address issues of federal law,' ASARCO Inc. v. Kadish, 490 U.S. 605, 617 (1989) -- as the sole forum for such cases, with defendants unable to seek removal to federal court. . . . By declaring that federal courts lack jurisdiction, the Court has thus ensured that state courts will exercise exclusive jurisdiction over these sorts of class actions."

TransUnion, supra at 2224 n.9.

The United States District Court judge remanded the instant case to the Superior Court in a decision that relied on Spokeo and correctly anticipated the result in TransUnion, which had not yet been decided. The judge reasoned that the plaintiff had not alleged a concrete injury for art. III purposes because Eascare's alleged FCRA violations were merely technical, procedural, and formal; they did not cause the plaintiff any concrete injury. See Kenn, 483 F. Supp. 3d at 34-35.

3. Standing in Massachusetts courts. The plaintiff's lack of standing in Federal court is not dispositive of the question of her standing in State court. Because they are not bound by art. III, "State courts remain free to define their own

jurisdictional limits even when adjudicating Federal claims." LaChance v. Commissioner of Correction, 475 Mass. 757, 771 n.14 (2016). See Weld v. Glaxo Wellcome Inc., 434 Mass. 81, 88 (2001) (State courts "may determine, particularly when class actions are involved, that concerns other than standing, in its most technical sense, may take precedence").

Under general principles of standing in the courts of the Commonwealth, an allegation of injury is required. See Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448 Mass. 15, 21 (2006) ("To have standing in any capacity, a litigant must show that the challenged action has caused the litigant injury" [citation omitted]). If the plaintiff is suing a defendant for violation of a law or regulation, the alleged injury must fall "within the area of concern" of the relevant statute or regulatory scheme. Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 293 (1977). Only plaintiffs who have themselves suffered or are in danger of suffering injury have standing to sue, see Burlington v. Bedford, 417 Mass. 161, 164 (1994), and the injury alleged must be more than merely "speculative, remote, and indirect." Sullivan, supra.

In determining whether a plaintiff has alleged sufficient injury to have standing to sue under a statute, we are guided by the directives of the legislative branch. "To determine whether

[the plaintiff] has standing, we look to the statute itself." Phone Recovery Servs., LLC v. Verizon of New England, Inc., 480 Mass. 224, 227 (2018). See Local 1445, United Food & Commercial Workers Union v. Police Chief of Natick, 29 Mass. App. Ct. 554, 558 (1990) ("When a statute confers standing in relation to particular subject matter, that statute, rather than more general ideas about standing, governs who may initiate legal action in relation to the subject matter"). Thus, the determination whether a plaintiff has standing to commence a "qui tam," or "whistle blower," action is based on the definition of "relator" under G. L. c. 12, § 5A. See Phone Recovery Servs., LLC, supra at 228. Whether a plaintiff has standing to bring a G. L. c. 93A action for an unfair and deceptive trade practice is guided by the definition of "injured" within the meaning of G. L. c. 93A, § 9 (1). See Tyler, 464 Mass. at 502-503. Standing to challenge a decision under the Zoning Act, G. L. c. 40A, is governed by the definition of "person aggrieved" in G. L. c. 40A, § 17. See 81 Spooner Road, LLC v. Zoning Board of Appeals of Brookline, 461 Mass. 692, 700 (2012).

As relevant here, Congress provided a cause of action to sue, in State (or Federal) court, "to enforce any liability created" under FCRA (emphasis added). 15 U.S.C. § 1681p. Under FCRA, "[a]ny person who willfully fails to comply with any

requirement imposed under this title with respect to any consumer is liable to that consumer" for actual or nominal damages (emphasis added). 15 U.S.C. § 1681n(a)(1). Eascare's willful failure to provide the plaintiff with the disclosure required by 15 U.S.C. § 1681a, thereby obtaining her authorization to conduct the consumer report, if proven, would establish "liability." Under the plain language of FCRA, the plaintiff alleged a legal injury for which Eascare is liable.

Although the plaintiff may not be able to articulate concrete, actual damages arising from Eascare obtaining her consumer report by using a noncompliant disclosure form and requiring her to agree to a release of liability in addition to a background check, the FCRA liability provision recognizes that the injury to the consumer may not be measurable. Thus, in an action for a willful violation, the statute provides for the option of the plaintiff recovering actual damages caused by the FCRA violation or, if the plaintiff cannot prove actual damages, nominal damages between $100 and $1,000. See 15 U.S.C. § 1681n(a)(1)(A). In this regard, the plaintiff's allegation of Eascare's willfulness is critical, as the cause of action for a

negligent violation, by contrast, does require a showing of actual damages.  See 15 U.S.C. § 1681o(a)(1).[8]

The injuries alleged are plainly within FCRA's area of concern.  The plaintiff alleged violations of "procedures closely tied to FCRA's overarching goals."  Groshek v. Time Warner Cable, Inc., 865 F.3d 884, 887 (7th Cir. 2017), cert. denied, 583 U.S. 1098 (2018).  "[T]he stand-alone disclosure requirement . . . is clearly designed to decrease the risk of a job applicant unknowingly providing consent to the dissemination of his or her private information," and "the authorization requirement . . . further protects consumer privacy by providing the job applicant the ability to prevent a prospective employer from procuring a consumer report, i.e., by withholding consent." Id.[9]

The plaintiff alleged the violation of her legal rights under FCRA, which, if proved, entitles her to damages under FCRA.  Although her injury may not be "concrete" as that term is

---

[8] The plaintiff's allegation that Eascare actually "procure[d] a consumer report, or cause[d] a consumer report to be procured," 15 U.S.C. § 1681b(b)(2)(A) -- not just that Eascare obtained her authorization -- is also critical to her claim of legal injury and her standing.

[9] The United States Court of Appeals for the Seventh Circuit nonetheless held that the plaintiff in Groshek, 865 F.3d at 887, lacked art. III standing because he "alleged a statutory violation completely removed from any concrete harm or appreciable risk of harm."

understood in art. III jurisprudence, it is not "speculative, remote, and indirect" as a matter of State law. Sullivan, 448 Mass. at 21. Our cases holding that plaintiffs' injuries are too speculative or remote to bestow standing under common law concern hypothetical future injuries premised on a certain set of facts occurring, that is, "allegation[s] that an injury might have occurred if a series of events transpired in a certain way." Pugsley v. Police Dep't of Boston, 472 Mass. 367, 371 (2015). See, e.g., Barbara F. v. Bristol Div. of the Juvenile Court Dept., 432 Mass. 1024, 1025 (2000) (plaintiff had no standing to challenge orders entered against another person based on hypothesized series of events that might befall plaintiff); Burlington, 417 Mass. at 164-165 (municipality lacked standing to challenge another municipality's act of eminent domain where alleged injury based on hypothetical course of future property development); Slama v. Attorney Gen., 384 Mass. 620, 625 (1981) (injury based on hypothetical result of vote on ballot initiative too speculative to support standing); Professional Fire Fighters of Mass. v. Commonwealth, 72 Mass. App. Ct. 66, 76-77 (2008) (association of fire fighters lacked standing to challenge regulations for emergency medical services based on indefinite and hypothetical predicted harms). Here, the plaintiff's allegations plausibly suggest that a particularized, nonspeculative violation of FCRA.

Nor is the injury to the plaintiff "indirect." She received a noncompliant disclosure form and authorized Eascare to obtain her consumer report without having been advised about her rights in the manner Congress mandated.[10] Having herself received the noncompliant disclosure and acted upon it, the plaintiff is not acting as a self-constituted private attorney general pursuing a purely vicarious claim. See Roberts v. Enterprise Rent-A-Car Co. of Boston, 445 Mass. 811, 814 (2006).

Although at least two Massachusetts cases appear to have imported art. III's concrete injury requirement, those decisions were concerned with claims in the nature of mandamus, which directly implicate the principle of separation of powers under art. 30 of our Declaration of Rights because they entail "telling a coequal branch of government how to conduct its business." Alliance, AFSCME/SEIU, AFL-CIO v. Commonwealth, 427 Mass. 546, 548 (1998). See Perella v. Massachusetts Turnpike Auth., 55 Mass. App. Ct. 537, 540 (2002). For this reason, the "requirement of a concrete and particularized harm must be enforced with particular rigor in administering the writ of

---

[10] We do not read the plaintiff's references to "applicants like [her]" in paragraphs 25 and 26 of the complaint as alleging that only the other applicants, but not the plaintiff herself, were unable to preserve their privacy, correct errors, or were misinformed about their legal rights and remedies. Because we are acting on a rule 12 motion, we read the complaint in the light most favorable to the plaintiff.

mandamus."  Alliance, AFSCME/SEIU, AFL-CIO, supra at 549.  The plaintiff's claims here do not implicate art. 30 concerns.

Finally, because standing in this case is not governed by the definition of "injured" in G. L. c. 93A, § 9, the plaintiff is not required to allege that the violation of her legal rights under FCRA caused her "some kind of separate, identifiable harm arising from the violation itself."  Tyler, 464 Mass. at 503.  The interpretation of the "injury" requirement of c. 93A is based on the language and history of the statute.  See id. at 502-503.  In Leardi, 394 Mass. at 160, the court concluded that "in amending G. L. c. 93A, § 9, the Legislature exercised its prerogative to create a legal right, the invasion of which, without more, constitutes an injury."  Although the court subsequently declined to follow the Leardi decision's interpretation of c. 93A,[11] nothing in the line of cases construing c. 93A's injury requirement suggests that our Legislature would not be permitted to create a statutory scheme providing compensation for plaintiffs whose legal rights are infringed, but who are not identifiably injured thereby, in order to deter such practices -- as Congress has done in FCRA.

---

[11] See Tyler, 464 Mass. at 503 ("To the extent . . . Leardi can be read to signify that 'invasion' of a consumer plaintiff's established legal right in a manner that qualifies as an unfair or deceptive act under G. L. c. 93A, § 2, automatically entitles the plaintiff to at least nominal damages [and attorney's fees], we do not follow the Leardi decision").

Cf. TransUnion, 141 S. Ct. at 2226 (Kagan, J., dissenting) (courts should defer to judgment of legislative branch as to what causes harm or risk of harm and its reasonable determination that creating cause of action "will contribute to compensating or preventing the harm at issue").

"What is required at the pleading stage are factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief."  Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  Here, the plaintiff has plausibly alleged liability of Eascare for FCRA violations and an entitlement to damages if she prevails.  The judgment dismissing the plaintiff's FCRA claims for lack of standing is vacated, and the plaintiff may proceed on her claims in the Superior Court.

So ordered.