Wilkins, Douglas H., J.
In this appeal under G.L.c. 30A, §14, from a decision from the Director of the Office of Medicaid, Executive Office of Health and Human Services (“Director”), the plaintiff, West Boylston Nursing Home, Inc. d/b/a Oakdale Rehab & Skilled Nursing Center (“Nursing Home”) has filed a Plaintiffs Motion for Leave of Court to Present Testimony of Alleged Irregularity in Procedure Before the Agency Not Shown in the Record Pursuant to M.G.L.c. 30A, §14(5) and Standing Order l-96(3)(b) (“Motion”). After hearing and review of the papers, the Motion is ALLOWED WITH CONDITIONS.
BACKGROUND
This case involves a claim for a patient who was admitted to the Nursing Home on January 17, 2008. The patient was approved for MassHealth benefits, effective February 18, 2008. The Nursing Home submitted claims for services to the patient. MassHealth approved and paid the claims in the total amount of $38,660.09.
In October 2009, the Nursing Home discovered that a third party (the Kidney Foundation) had been paying an insurance premium for the patient. As a result, MassHealth overpaid $5,325.60. The Nursing Home reported this information to MassHealth and submitted an adjusted bill for service dates April 1, 2008, through November 30, 2008.
On January 12, 2010, MassHealth sent a Provider Remittance Advice, in which it recouped a total of $38,399.09, instead of just the $5,325.60 overpayment. Instead of appealing that decision, the Nursing Home re-billed MassHealth, which responded with a new Provider Remittance Advice dated February 9, 2010, denying the adjustment once again. The Nursing Home filed an appeal to the Final Deadline Appeals Board, which denied the appeal on March 3,2011. The Nursing Home received the denial on March 24, 2011 and filed a timely appeal to this Court.
After filing the appeal in this Court, a Nursing Home representative, Elizabeth Cogavin, contacted Ronald Pawelski, the defendant’s Nursing Facility Program Manager. Cogavin received an email from Mr. Pawelski dated May 10,2011. The email states that “ [t]he appeal was handled properly and denied correctly for regulatory reasons.” However, it also explained why — in terms not contained in the certified record:
In [MassHealth’s former computer system], the system calculated the difference on an adjusted claim based on the claim being processed and just paid the difference. One of the features in [the new] claim processing [system (“newMMIS”)] is the void/replace functionality. In newMMIS, the system backs out the original payment and then replaces it in full based on the changes made on the adjusted claim. If this adjustment claim denies, the original pay *78 ment is retracted. This causes a problem for providers who are trying to return money and are over the one year filing limit for the claims. Instead of an adjustment process and the overpayment being retracted, the entire payment on the claim is recouped. This is not a good incentive to encourage providers to voluntarily identify and return over-payments that are over one year from the date of service. Perhaps the Provider Compliance Unit. . . could take on the role of gatekeeper for these voluntary returns, researching the claims and then forwarding them to Claims Operations for timely filing edit overrides.
As is apparent, this email not only explained features of the system and the true reason for MassHealth’s action not revealed in the certified record, but also discloses the existence of a remedy known as an “edit override," of which the Nursing Home was not notified, according to other evidence in the record.
DISCUSSION
While reviews of administrative decisions are almost always based exclusively upon the certified record of the agency, there is an exception for “alleged irregularities in procedure before the agency, not shown in the record.” G.L.c. 30A, §14(5). This exception applies very rarely, since most procedural irregularities are shown in the record and since subsection (5) does not permit submission of arguments and evidence to the Court that should have been presented below. See Bulger v. Contrib. Retirement Appeals Board, 447 Mass. 651, 661-62 (2006); She Enterprises, Inc. v. State Building Code Appeals Board, 20 Mass.App.Ct. 271, 273 (1985), and cases cited. See also Georgia Real Estate Comma. v. Burnette, 255 S.E.2d 38, 39 (Ga. 1979) (construing uniform administrative code); Bulluck v. Pelham Wood Apartments, 390 A.2d 1119, 1127 (Md.App. 1978) (same). This case is one of the rare exceptions.
Not very much is “apparent from the record” here. The administrative record in this case consists almost entirely of claims materials replete with numerical codes, abbreviations and other figures and letters that are decipherable only with considerable difficulty and by reference to materials outside the record. The Director’s opposition attaches numerous extra-record explanatory materials, including binding guidance documents, which arguably should be part of the record, because they were considered by the agency in making its decision. See Douglas Environmental Assocs. v. Dept. of Environ. Protection, 429 Mass. 71, 74-75 (1999) (the record “consistís] of any document or material that the agency decision makers directly or indirectly considered, including evidence contrary to the agency’s position, but excluding documents that set forth motives and thought processes used in arriving at the agency’s decision”). In any event, the Director argues, sensibly, that the Court can take notice of those attachments.
The problem is that the attachments do not answer key questions in this case, because the agency has additional knowledge not reflected in the record or the Director’s attachments. For instance, the guidance makes clear that codes 853 and 855 signify a final decision that must be appealed within 30 days. However, the key regulation and guidance constitute “procedures for providers to appeal erroneous denials by the [agency) of a provider’s claim for payment . . .” G.L.c. 118E, §38 (emphasis added). See also 130 CMR 450.323 (appeals of denial of a claim). In this case, the Nursing Home was making no claim for payment for funds previously and properly paid. It would appear that the Nursing Home’s “claim,” as such, was already finally allowed years earlier and therefore not “denied” or, at least, not denied as to the previously paid and indisputably proper reimbursement. Neither the statute nor the regulation addresses an attempt to return an overpayment for a claim that was already allowed. Nor does recoupment of monies previously allowed and still properly payable easily fit the definition of a “denial” of a “claim.”
Perhaps such an attempt is deemed an “adjustment.” Certainly, that is a standard use of the word. The guidance (p. 4) provides as follows;

When I submit an adjustment, why does the system take back the whole amount?

Providers need to carefully check the adjustment section of the remittance advice for both header and line detail explanation of benefit (EOB) codes. If an EOC code is listed in either field, there was an error on the submitted adjustment claim and the replaced claim contained errors that did not allow the claim to be processed.
A logical response to such guidance would be to resubmit the claim, which is what the Nursing Home did.
The alleged procedural error, therefore, is the absence of any notice to the provider on how to deal with an attempt to return an overpayment on a previously paid claim for services more than one year old — coupled with the absence of any statement of reasons why the system recouped amounts previously found to be payable (and paid). A statement of reasons is essential to enable the Nursing Home to know whether, when and how to appeal. The absence of such explanation had the further procedural consequence of failing to give the Nursing Home due notice that the problem could not be solved by resubmission, since it would take a fundamental challenge to the entire structure of the computerized payment system. In other words, the Director, through the computerized system, arguably failed to give notice that the real reason that the Nursing Home was losing funds that had previously been allowed is that the computer was programmed to treat any voluntaiy return of an overpayment as submission of a new claim, which would be rejected in its *79 entirety — notjust as to the overpayment — if submitted more than a year late.
Lack of notice as to how to present a claim and lack of adequate disclosure of the real reasons for agency action are both “procedural” errors within the meaning of G.L.c. 30A, §14(5). The Nursing Home’s proposed evidence tends to explain the nature of these alleged failures in a way that is not apparent from the record. In addition, the proposed evidence demonstrates the arguable futility of challenging the overzealous “re-coupment” of properly paid funds through an appeal to the Final Deadline Appeals Board, as opposed to seeking an edit override. Therefore, the evidence meets the test of G.L.c. 30A, §14(5) and should be considered.
As conceded at oral argument, the evidence consists solely of documentation and does not extend to any testimony. Also as conceded, the entire email exchange shall be presented including the portion attached to the Director’s memorandum, not just the portion attached to the motion.
The Court understands why the Director has designed a system to address and thwart the temptations for providers to obtain more reimbursement than they are entitled to receive — temptations to which some providers succumb, whether by intent, willful ignorance, neglect or lack of motivation to do otherwise. This Court cannot second-guess the system’s design, nor does it call that system into question in any way. What it can do, however, is to enable a provider that has tried to do the right thing to make its case for procedural error based upon a full presentation of the real reasons why the Director denied portions of a claim long allowed and a full assessment of whether the Director gave lawfully sufficient (lj notice to the Nursing Home of how to return an overpayment voluntarily, (2) notice of how to challenge the computer system when it recoups monies properly paid and (3) reasons of the ground for recoupment of the uncontested portion of the previously approved claim for which final payment was made. None of these issues is adequately framed by the Director’s certified record.
ORDER
For the above reasons, the Plaintiffs Motion for Leave of Court to Present Testimony of Alleged Irregularity in Procedure Before the Agency Not Shown in the Record Pursuant to M.G.L.c. 30A, §14(5) and Standing Order l-96(3)(b) is ALLOWED upon the conditions that the supplementation to the record (1) shall be limited to documentary evidence only and (2) shall consist of both the email attached to the Motion and the portion of the same email chain attached to the Opposition.