Wilkins, Douglas H., J.
The administrative law questions in this case arise out of a state agency’s attempt to computerize its statutorily conferred decision-making power.[2] The plaintiff, Paul C. Nordberg, is licensed as a school business manager under G.L.c. 71, §38G. He challenges the practice of the Massachusetts Department of Education (“Department”), which allows a computer to grant waivers of §38G licensure requirements upon request and certification by superintendents of local school districts.
Earlier in this case, the Appeals Court reversed the dismissal of the plaintiffs claims on grounds of sovereign immunity (G.L.c. 258, § 10(b)) and failure to state a constitutional claim. Nordberg v. Massachusetts Dep’t of Educ., 76 Mass.App.Ct. 216, 218 (2010). Now before the Court is the Plaintiffs Motion seeking the Entry of Partial Summary Judgment in this Litigation pursuant to Massachusetts [Rules] of Civil Procedure No. 56 and Massachusetts Superior Court Rule No. 9 (“Motion”).
BACKGROUND
The plaintiff commenced this action on August 28, 2007, asserting intentional and malicious conduct by Commissioner Driscoll and violations by all defendants of his state and federal constitutional rights. After the Appeals Court’s decision, the plaintiff filed his second amended complaint on March 1, 2010. On July 30, 2010, upon the Department’s motion, the Court (Agnes, J.) dismissed a portion of the claims based upon the statute of limitations (for violations prior to August 28, 2004), claims for jobs that the plaintiff did not allege he applied for, claims under 42 U.S.C. §1983 and the state constitutional claims. The plaintiff filed a third amended complaint, with leave of court issued on July 6, 2011.
On June 29, 2011, the plaintiff filed this Motion, which the Department has opposed. Based upon the *164 parties’ Rule 9A(b)(5) submissions and the inferences favorable to the Department, the following facts are undisputed and are deemed admitted pursuant to Mass.R.Civ.P. 56(d).
From February 2000 to the present, the plaintiff has continuously held a license issued by the Department as a Public School Business Administrator.[3] On many occasions, he has complained in writing to the Department that, from February 2000 to April 2006, he has applied for a position as school business manager within a municipal or regional school district within the Commonwealth of Massachusetts; the school district hired another applicant for the position even though the applicant did not hold a valid Department license as a public school business administrator; and the Department issued a “waiver, permitting the school district to hire or continue to employ the unlicensed applicant.” In several instances, unlicensed persons were continuously employed as the district’s School Business Manager for periods exceeding three years and for as long as five years without becoming licensed school business administrators.
Until mid-2002, the Department manually processed requests for waivers of the licensing requirement. Beginning in mid-2002, the Department implemented an automated computerized waiver system (“CWS”) for processing waiver applications under G.L.c. 71, §38G. The Department’s regulations do not refer to any such computerized system.
When requesting a waiver from the CWS, the superintendent certifies under the penalties of perjury that:
I have taken all usual actions, beyond internal postings, to recruit a licensed and qualified person for [the position for which a waiver is requested] and, if requested, will submit copies of the advertisements from various media resources (newspapers, placement offices, the internet, etc.).
I am prepared to submit a list of any licensed applicants who declined the position AND documentation as to why any licensed applicants were not qualified to perform the duties of [the position for which a waiver is requested].
By signing a waiver request form, a superintendent is “verifying that the information” he or she submits “is true and contains no misrepresentations or falsehoods.” The CWS does not request or review the underlying list or documentation supporting the district’s representations.
If the superintendent requesting the waiver makes these certifications, the CWS automatically issues the waiver. Accordingly, a superintendent who determines — honestly or not and with or without bias or favoritism — that all usual actions were taken and that a licensed applicant is not qualified, receives a waiver even if the Commissioner (or delegee) would have disagreed if he or she had reviewed the documentation. The CWS always accepts the superintendent’s statements as true; nothing in the certification permits a determination by the Department (as opposed to the District’s superintendent) whether licensed, qualified applicants have applied and should be hired in lieu of granting a waiver.
The Department has used the CWS to grant more than 12,000 waivers since January 1, 2002.
The Plaintiff filed this lawsuit in August of 2007.[4]
DISCUSSION
The Plaintiffs Motion seeks relief on the premise that the Department’s computerized waiver issuance system is unlawful. The defendants oppose the Motion on several grounds, including standing, the merits and lack of irreparable harm.
Standing.
As the Department recognizes, the Declaratory Judgment Act “may be used in the superior court to enjoin and to obtain a determination of the legality of the administrative practices and procedures of any municipal, county, or state agency . . .” G.L.c. 231A, §2. It is true that the Declaratory Judgment Act does not create standing. Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135 (2000). The defendants challenge the plaintiffs standing primarily on the ground that he is not within the area of concern of the statute.
To establish standing, a plaintiff must first show injury. Massachusetts Ass’n of Indep. Ins. Agents and Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 293 (1977) (“MAILAB”). The generally applicable principle regarding injury to the plaintiff, which governs here, is as follows:
“From an early day it has been an established principle in this Commonwealth that only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duly of passing upon the validity of the acts of a coordinate branch of the government.” Tax Equity Alliance for Mass. v. Commissioner of Rev., 423 Mass. 708, 715 (1996), quoting from Doe v. The Governor, 381 Mass. 702, 704 (1980). Ordinarily, “[a]lleging ‘[i]njury alone is not enough; a plaintiff must allege a breach of duty owed to [him] by the public defendant.’ Injuries that are speculative, remote, and indirect are insufficient to confer standing. ‘Not every person whose interests might conceivably be adversely affected is entitled to [judicial] review.’ Moreover, the complained of injury must be a direct consequence of the complained of action. To have standing in any capacity, a litigant must show that the challenged action has caused the litigant injury.’ ” (Citations omitted.) Ginther, 427 Mass. at 323.
Perella v. Massachusetts Turnpike Auth., 55 Mass.App.Ct. 537, 539 (2002), quoting Kaplan v. Bowker, 333 Mass. 455, 460, 461 (1956). There is no question that the plaintiff has alleged injury to himself *165 when districts used CWS-generated waivers to select unlicensed applicants instead of the plaintiff. For standing purposes, sufficient direct injury flows from the plaintiffs claim that he has been denied employment because the Department’s waiver system has allowed uncertified persons to be hired ahead of him even when he was the only licensed applicant.
Injury alone is not enough. A party must also “allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred.” MAIIAB, 373 Mass. at 293. In that case, the Court noted that injury from business competition usually is not enough to confer standing. However, “[t]his rule does not apply ... to competitors in a regulated industry . . . who are attempting to challenge governmental action threatening their competitive position.” Id. The exception confers standing when a plaintiff alleges a “type of injury” that “is inconsistent with the aims and purposes of the entire regulatory scheme.” Id. at 294.
To say that the plaintiff is not within the scope of concern of the statute — when the entire regulatory scheme operates specifically upon the premise that hiring licensed business administrators is the best way to promote the public interest — is to deny reality. While G.L.c. 71, §38G, is not designed primarily to benefit persons in the plaintiffs shoes, the scope of statutory concerns includes hiring licensed business administrators as a means to improve educational and financial performance of public school systems. See G.L.c. 71, preamble (purpose of c. 71 “is to provide immediately for the improvement of public education in the commonwealth”); 603 Code Mass. Regs. §7.01 (purpose of the regulations is to “(c) Clarify and strengthen the professional standards for practice for teachers and administrators . . . (e) Strengthen safeguards for parents and students ...(f) Prepare educators to help all students achieve . . .”). As the Appeals Court has said, “(t]he Legislature has determined that the public is best served if school districts hire only school business administrators who have satisfied the requirements to become ‘certified.’ ” Nordberg, 76 Mass.App.Ct. at 218. The Appeals Court’s pronouncements in this particular case are, of course, binding. Since standing is jurisdictional and courts always have a duty to verify their own jurisdiction,[5] it would be strange indeed if the Appeals Court reversed the earlier dismissal of the complaint, only to have the case dismissed for lack of standing.
The Department has confused the question whether the statute is for the plaintiffs benefit (which might be relevant to an implied right of action for damages[6]) with whether the plaintiff lies within the scope of statutory concern, which determines standing. Because hiring licensed school business administrators is squarely within the scope of statutoiy concern, the plaintiff has alleged a “competitive injury which on its face implicates the effectuation of these important public policies.” MAIIAB, 373 Mass. at 295. It follows that the plaintiff has standing to bring his claims.[7]
Validity of the CWS.
At the heart of the case on the merits is G.L.c. 71, §38G.[8] That statute implements a program for certification and licensing of individuals for various positions in the public schools, including school business administrators. As relevant, §38G provides in part that:
No person shall be eligible for employment as a . . . school business administrator . . . unless he has been granted by the commissioner a provisional, or standard certificate with respect to the type of position for which he seeks employment; . . . provided . . . that a superintendent may upon request be exempt by the commissioner for any one school year from the requirement... to employ certified personnel when compliance therewith would in the opinion of the commissioner constitute a great hardship in securing teachers for that school district. (Emphasis added.)
The statute requires atleasttwo things: (1) an “opinion of the commissioner,” and (2) not just inconvenience or professional disagreement, but “a great hardship.” A key question in this case is whether the CWS meets these requirements.
The Department has implemented §38G through a regulation, 603 Code Mass. Regs. §7.14(13), which provides in relevant part:
The Commissioner may exempt a district for any one school year from the requirement to employ personnel licensed or certified under M.G.L. §38G upon request of a superintendent and demonstration to the Commissioner that the district has made a good faith effort to hire licensed or certified personnel and has been unable to find them. (Emphasis added.)
This regulation is entitled to the same deference given a statute. See Massachusetts Fed’n of Teachers, AFT, AFL-CIO v. Board of Educ., 436 Mass. 763, 771 (2002). The Department’s interpretation of its own regulation is entitled to “considerable deference.” Rasheed v. Commissioner of Corr., 446 Mass. 463, 475-77 (2006).
Notably, the use of the word “may” reserves the Commissioner’s exercise of discretion. See Case of Murphy, 53 Mass.App.Ct. 708, 716 (2002) (“may” is ordinarily permissive, not mandatory). Yet, the computerized system does not “amount to the exercise of discretion.” Nordberg, 76 Mass.App.Ct. at 218 (discussing discretionary function exemption of the Massachusetts Tort Claims Act, G.L.c. 258, § 10(b)). As the Appeals Court stated:
Here, accepting as true the allegations in Nordberg’s well-pleaded complaint. . . , the commissioner — contrary to the mandate of the Legislature — divested himself of the discretion he was *166 statutorily required to exercise in order to form an opinion as to whether to grant or deny a waiver. Discretion was neither exercised nor abused; it was extracted entirely from the process and set aside . . . The discretion that ought to be involved in deciding waivers entails “weighing alternatives and making choices with respect to public policy and planning,” as opposed to conduct that consists of “the carrying out of previously established policies or plans [citation omitted].”
Id. at 218-19 (emphasis in original).
The summary judgment record now establishes as fact those allegations upon which the Appeals Court relied. While the Appeals Court was addressing the discretionary function exemption, its logic applies fully to the question whether the Department’s computerized system complies with the statutory mandate for the exercise of discretion. Indeed, the Appeals Court added:
We note in passing that if an administrator could permissibly delegate his authority to exercise discretion to a computer such a scenario would call for, upon review, a showing that the computer was capable of exercising the discretion with which it was vested, either rightly or wrongly; i.e., had the capacity or ability to make “choices,” which is the essence of discretion. See United States v. Gaubert, 499 U.S. [315,] 325 [(1991)].
Nordberg, 76 Mass.App.Ct. at 219 n.6.
One possible response is to view 603 Code Mass. Regs. §7.14(13) not as supplanting the Department’s discretion, but as exercising it, thereby meeting the test of the Appeals Court’s footnote 6.[9] The Department thus argues that it has merely loaded the regulatory criteria into a computer. As the Department puts it (Opposition at 9-10), “[t]he regulation at issue in this case allows the commissioner to exempt a school district from the requirement to employ licensed personnel when a superintendent requests it and demonstrates to the commissioner that the district has made a good-faith effort to hire licensed or certified personnel but has been unable to find them.” 603 Code Mass. Regs. §7.14(13). As an abstract matter, this statement is unassailable, but it does not validate the CWS that the Department has actually put in place.
The regulation sets forth three criteria: (1) a “demonstration” of (2) “a good faith effort to hire licensed or certified personnel” and (3) an inability “to find them.” The first requirement implements that statutory requirement that eligibility for the waiver be determined “in the opinion of the commissioner.” G.L.c. 71, §38G. The second and third elaborate on the “great hardship” test. Id.
On the facts, the CWS falls well short of implementing the statutory and regulatory criteria. Under the CWS, the superintendent makes no “demonstration” to the Commissioner before receiving an automatic waiver. The CWS effectively replaces “allows” with “requires,” thereby eliminating any “opinion of the commissioner” within the meaning of the statute and reading the word “may” out of the regulation. As for “great hardship,” the CWS elicits no proof of a good-faith effort to “hire” (as opposed to “recruit”) licensed candidates and does not inquire whether the superintendent “has been unable to find” them. The superintendent’s certification does not cure these shortcomings. Even if the statute and regulation allowed the Commissioner to accept a local “say so” in lieu of demonstration, the superintendent seeking the waiver never even has to certify that he or she has tried to “hire” and is “unable to find” qualified or certified personnel — who presumably would be in the pool of qualified and willing candidates about whom the CWS never explicitly asks. Instead of implementing the high standards embodied in the “unable to find” and “great hardship” tests, the existing computer system’s program employs a watered-down test, rife with opportunities for favoritism and undermining legislative intent. See Nordberg, 76 Mass.App.Ct. at 219. The CWS, as implemented, is inadequate to the task required by 603 Code Mass. Regs. §7.14(13).
The CWS’s failure to obtain and evaluate information required by statute and regulation, coupled with the granting of an automatic waiver based on that inadequate information without agency determination of the factors made essential by law, violates §58G and 603 Code Mass. Regs. 7.14(13) and renders the CWS arbitrary and capricious. See Allen v. Boston Redev. Auth., 450 Mass. 242, 257, 259 (2007) (“a substantial oversight” in compiling required information which eliminated “the opportunity for meaningful review” was arbitrary and capricious; likewise, failure to provide information previously required by the agency rendered the agency’s subsequent approval unlawful).[10]
This is not to say that the use of a CWS is per se unlawful. With appropriate precautions, computers “can intelligently broaden rather than constrain the policymaker’s options and avoid the ‘artificial narrowing of options that [can be] arbitrary and capricious.’ ” Sierra Club v. Costle, 657 F.2d 298, 334-35 (D.C. Cir. 1981) (citations omitted). Cf. Nordberg, 76 Mass.App.Ct. at 219 n.6. But the system that the Department actually implemented divests the Commissioner of his discretion and allows the computer to decide. That is “contrary to the mandate of the Legislature.” Id. at 218. Compare Sierra Club, 657 F.2d at 334-35 (upholding EPA’s computer modeling only after noting, among other things, the agency’s “insistence that ultimate responsibility for the policy decision remains with the agency rather than the computer . . .”). It therefore violates G.L.c. 71, §58G, and the Court will so declare.
*167 Public Disclosure.
The plaintiff also asks the Court to order that the public have access to information regarding each waiver issued by the Department. He advances no statute that the defendants have violated in this regard; he simply believes that public disclosure of this information is good public policy.
The Legislature has already resolved the disclosure question. Subject to some exemptions, any citizen may obtain the information in question from the public agency holding that information by submitting a public records request. G.L.c. 66, §10. See also G.L.c. 4, §7, clause 26th (definition of public record). The Court has no authority to require more disclosure from the Executive Branch than the Legislature has mandated. Accordingly, summary judgment will enter in favor of the defendants pursuant to Mass.R.Civ.P. 56(c), dismissing the claim for greater public disclosure of information.
Relief.
The question of remedy remains. Where, as here, the Court enters a declaration under G.L.c. 231 A, §2, declaring an administrative practice or procedure unlawful, the plaintiff or any other person with standing may seek further relief or may file “a petition for contempt.” G.L.c. 231A, §5. Particularly in light of those consequences, the Court relies upon the good faith of executive branch officials to comply with the law, once declared by the Court. See Massachusetts Coalition for the Homeless v. Secretary of Human Servs., 400 Mass. 806, 825 (1987) (“[I]t has been our practice to assume that public officials will comply with the law declared by a court. . .”); Doe v. Registrar of Motor Vehicles, 26 Mass.App.Ct. 415, 425 n.18 (1988) (“(C)ourts may appropriately assume that public officials will act in accordance with their judicially defined duties, even when the individuals involved are other than the plaintiffs in the original action”). This case has certainly not reached a point where judicial injunctions are necessary, let alone where the Courts may prescribe how the Department should exercise its discretion. See Perez v. Boston Hous. Auth., 379 Mass. 703, 739-40 (1980) (judicial intervention appropriate where public officials “persistí 1 in indifference to, or neglect or disobedience of court orders”). In these circumstances, declaratory relief alone is the appropriate remedy at this time.
The Department has argued persuasively that abruptly halting the waiver request process would have an adverse effect upon the processing of waivers not only for school business administrator positions but also for all other school personnel positions. The result could be a delay in filling open positions, which may operate to the detriment of the students and teachers. The magnitude of the problem flows in part from the sheer number of waiver requests involved— more than 12,000 from Januaiy 1, 2002, through December 31, 2010. For these reasons, the Court will stay its decision to permit an appeal, if the defendants choose, or to permit time to bring the system into compliance in an orderly fashion.
CONCLUSION AND ORDER
For the above reasons, the Court ORDERS THAT:
1. The Plaintiffs Motion seeking the Entry of Partial Summary Judgment in this Litigation Pursuant to Massachusetts [Rules] of Civil Procedure No. 56 and Massachusetts Superior Court Rule No. 9 is ALLOWED IN PART, EXCEPT AS DENIED IN PARAGRAPH 4 BELOW.
2. The Court declares that the Department’s Computerized Waiver System as implemented violates G.L.c. 71, §38G, and 603 Code Mass. Regs. §7.14(13), by granting waivers without an opinion of the Department regarding whether failure to grant the waiver would create “great hardship,” whether the “district has made a good faith effort to hire licensed or certified personnel,” and whether the District is “unable to find” a qualified licensed applicant.
3. Paragraph 2 of this order is stayed for 30 days after entry, to permit an appeal and to permit assessment of the amount of time required to bring the Department’s waiver process into compliance with the statute. This stay is without prejudice to a motion to extend the stay for good cause shown.
4. Partial Summary Judgment pursuant to Mass.R.Civ.P. 56(c) is granted to the Defendants denying the Plaintiffs claim for an injunction that the Computerized Waiver Issuance System be closed down forthwith and that the Department be ordered to implement a new program for ready access to waiver information.

In fact, this is the second challenge to computerized agency decision-making to reach this session this fall. See West Boylston Nursing Home, Inc. d/b/a Oakdale Rehab & Skilled Nursing Ctr. v. Terence Dougherty, Dir. of the Office of Medicaid, Exec. Office of Health and Human Servs., Worcester Superior Court No. WOCV 2011-0605 (Order dated October 11, 2011), p. 5 [29 Mass. L. Rptr. 77] (allowing motion for leave to present extra-record evidence of procedural irregularities under G.L.c. 30A, §14(5), namely documentation that “the Director, through the computerized system, arguably failed to give notice that the real reason that the Nursing Home was losing funds that had previously been allowed is that the computer was programmed to treat any voluntary return of an overpayment as submission of a new claim, which would be rejected in its entirety — not just as to the overpayment — if submitted more than a year late”).

Despite its challenge to the plaintiffs standing, the Department claims that this fact is “immaterial.” The point of Rule 9A(b)(5) is to identify facts that are legitimately in dispute, not to provide an opportunity for boilerplate responses. See, e.g., Hon. Judith Fabricant, “Voice of the Judiciary: Just the Facts,” Boston Bar Journal (Summer 2011). Moreover, the Department’s Rule 9A(b)(5) response in many instances contains improper argument (see id.) and fails to dispute the facts set forth in the text above. Those facts are taken as admitted under Superior Court Rule 9A.

Despite its statute of limitations defense, the Department claims that this fact is “immaterial.” See footnote 3 above.

See, e.g. Ginther v. Commissioner of Ins., 427 Mass. 319, 322 n.6 (1998). Because standing is jurisdictional, I reject the Plaintiffs contention that the Department’s failure to raise the issue earlier should be treated as waiving the issue.

See Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 543-44 (1988).

I have considered whether it is relevant that the Legislature found it advisable to enact a specific statute to allow another licensed profession (attorneys) to bring an action against unlicensed persons practicing law. G.L.c. 221, §§46-46B. It is one thing to sue individuals for enforcement — traditionally a prosecutorial function reserved to the executive branch. Cf. G.L.c. 112, §46A. It is another to challenge a public agency’s unlawful practice or procedure in a Declaratory Judgment Action. I conclude that I should draw no negative inference from the statutes specifically authorizing enforcement against individuals.

At all times from January 1, 1953, until the present, the portion of G.L.c. 71, §38G, applicable to this dispute has been in effect. On January 8, 1959, the Attorney General of Massachusetts issued an opinion construing the statute as requiring that the Department and not the school district determine whether a “great hardship” would result if the district applying for a waiver were denied such a waiver.

In some instances, such as the exercise of enforcement discretion, an agency may limit its options by regulation. See Restaurant Consultants, Inc. v. Alcholic Beverages Control Comm’n, 401 Mass. 167, 170 & n.8 (1987). That power does not extend to limiting its ability to consider the determinative factors selected by the Legislature.

That conclusion also construes §58G and 603 Code Mass. Regs. §7.14(13) to avoid reaching the difficult constitutional due process question, see Verrochi v. Commonwealth, 394 Mass. 633, 638 (1985) (construing statute to avoid constitutional difficulties), which the Appeals Court identified as follows: “If the Act was systematically undermined for this purpose [so ‘that friends or benefactors of the appointing authorities could be rewarded’], such actions would represent an abuse of power that would ‘shock[ ] the conscience,’ and would be actionable.” Nordberg, 76 Mass.App.Ct. at 219 (citations omitted).